# CASES

## ARGUED AND DETERMINED

IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS THE DISTRICT COURTS, AND THE COMMERCE COURT

---

### McINTYRE v. MODERN WOODMEN OF AMERICA.

(Circuit Court of Appeals, Sixth Circuit. November 7, 1912.)

No. 2,227.

1. EXCEPTIONS, BILL OF (§ 32*)—AUTHENTICATION—JURISDICTION—SUCCESSOR OF TRIAL JUDGE—"DISABILITY."

Rev. St. § 953, as amended by Act June 5, 1900, c. 717, § 1, 31 Stat. 270 (U. S. Comp. St. 1901, p. 696), provides that a bill of exceptions shall be authenticated, if signed by the judge of the court in which the cause was tried, or by the presiding judge thereof, if more than one sat on the trial, and in case the judge before whom the cause was tried, by reason of death, sickness, or other disability, was unable to hear and pass on the motion for a new trial and allow and sign the bill of exceptions, then the judge who succeeds such trial judge, or any judge of the court, if the evidence in such case has been or is taken in stenographic notes, or if the judge is satisfied by any other means that he can pass on such motion and allow a true bill of exceptions, shall pass on the motion and allow and sign the bill; but, if he is satisfied that he cannot fairly pass on the motion and allow and sign the bill of exceptions, he may in his discretion grant a new trial. *Held*, that the term "disability," as so used, was not limited to physical or mental disability, arising either from death, sickness, insanity, or disorder of like character, by reason of which the trial judge was disabled from performing his judicial functions, but meant "incapacity to do a legal act," and hence included incapacity of the trial judge to sign and settle a bill of exceptions, due to his resignation from the bench, in which case, the evidence having been taken stenographically and transcribed, his successor had jurisdiction to sign and settle a bill of exceptions.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. §§ 37–41, 194; Dec. Dig. § 32.*

For other definitions, see Words and Phrases, vol. 3, pp. 2079–2081; vol. 8, p. 7638.]

2. TRIAL (§ 420*)—DIRECTED VERDICT—OBJECTIONS—WAIVER.

Where defendant presented testimony in its own behalf, after the denial of its motion for a directed verdict, its exception to the denial of the motion was waived.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 983; Dec. Dig. § 420.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. COURTS (§ 339*)—FEDERAL COURTS—PROCEDURE—RULES IN STATE COURT—
FACTS IN NOTICE.

Under United States Circuit Court rule 44 for the districts of Michigan, declaring that, in the absence of a special provision by those rules, the rules of the state circuit court shall govern proceedings therein, Michigan Circuit Court rule 7, providing that facts contained in a notice attached to a defendant's plea shall be treated as admissions and need not be proved, was applicable to an action tried in a federal Circuit Court sitting in Michigan.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 914; Dec. Dig. § 339.*

Conformity of practice in common-law actions to that of state court, see notes to O'Connell v. Reed, 56 C. C. A. 594; Nederland Life Ins. Co. v. Hall, 27 C. C. A. 392.]

4. TRIAL (§ 139*)—DIRECTING VERDICT—SUFFICIENCY OF EVIDENCE.

Where, in a suit on a mutual benefit certificate, it was shown that the certificate was in defendant's possession at the trial, and defendant's notice attached to its plea alleged that on a specified date defendant issued a certain benefit certificate in the amount of $3,000 to the decedent, which was apparently the certificate sued on, the court properly denied defendant's motion to direct a verdict because of plaintiff's failure to produce or offer the benefit certificate in evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

5. INSURANCE (§ 784*)—MUTUAL BENEFIT SOCIETY—CHANGE OF BENEFICIARY—CERTIFICATE—DELIVERY.

Decedent, having been insured in defendant's society for many years, applied for a change of certificate, which was accomplished by the issuance of a new certificate, which, however, had not been formally delivered prior to his death. It did not appear that actual delivery to or physical acceptance by a member of a reissued certificate was required by the society's laws to make it effective. The new certificate had been issued, and bore date two days prior to decedent's death. He had already waived all rights under the old certificate, and in an action on the new one it was stipulated that the beneficiaries under the old certificate waived all their rights thereunder. *Held*, that the fact that the new certificate had not been actually delivered, and that plaintiff, therefore, did not offer the same in evidence, was no defense to an action thereon.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1950–1954; Dec. Dig. § 784.*]

6. APPEAL AND ERROR (§ 1061*)—DIRECTION OF VERDICT—PREJUDICE.

In an action on a mutual benefit certificate, defendant *held* not prejudiced by the court's refusal to direct a verdict because of plaintiff's failure to introduce the proofs of the death in evidence; the proofs having been thereafter introduced by defendant, and the court having given defendant the full benefit of the admissions contained in the proofs as to the cause of death, etc.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4137, 4209–4211; Dec. Dig. § 1061.*]

7. INSURANCE (§ 825*)—MUTUAL BENEFIT SOCIETY—ACTION ON POLICY—ILLNESS—QUESTION FOR JURY.

In an action on a policy making good health a condition to reinstatement, evidence *held* to justify submission to the jury of the question whether insured was afflicted with syphilis at the time of a prior reinstatement.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 2009; Dec. Dig. § 825.*]

---

8. **Trial (§ 139*)—Directed Verdict—Evidence.**

On an application for a directed verdict, it is the duty of the court to take that view of the evidence most favorable to the party against whom the instruction is requested, and the mere fact that there is a preponderance of the evidence in favor of the moving party does not require the judge to direct a verdict, even though it might justify the granting of a new trial.

[Ed. Note.—For other cases, see Trial Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

9. **Evidence (§ 553*)—Hypothetical Questions—Hypothesis—Conclusions.**

A physician, who conducted a post mortem examination of insured, testified that such examination revealed softening of the tissues of the floor of the right ventricle of the brain, arterial sclerosis, patches of bronchial pneumonia, and chronic vesiculitis. He then testified that he decided, from the brain tissue and the conditions found there and from the condition of the arterial walls, that a sclerosis condition existed, generally of a syphilitic nature, and expressed the unqualified opinion that death resulted from syphilis. *Held*, that the physician's statement that the various conditions mentioned by him were syphilitic in character was a conclusion from the facts, and not a statement of the facts, and hence such conclusion was properly eliminated from hypothetical questions, asked of other experts, whether it could be told from the conditions found by the doctor, in the absence of a positive blood test or the finding of germs in the tissues, whether decedent's death was due to a syphilitic affection.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2369–2374; Dec. Dig. § 553.*]

10. **Appeal and Error (§ 981*)—Denial of New Trial—Discretion—Review.**

A motion for new trial for newly discovered evidence is addressed to the judicial discretion of the court, the exercise of which, when not abused, is not subject to review.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3876; Dec. Dig. § 981.*]

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

Action by Benjamin H. McIntyre against the Modern Woodmen of America. Judgment for plaintiff, and defendant brings error. Affirmed.

Defendant is a fraternal benefit society. George H. McIntyre became a member in 1895. In 1906 a death benefit certificate for $3,000 was issued (in place of a then existing certificate), and made payable to McIntyre's five children. The by-laws of the society provide that a member who fails to pay benefit assessments, camp dues, and fines when payable shall ipso facto become suspended; his benefit certificate being absolutely null and void during such suspension. A member so suspended, however, if not engaged in certain prohibited occupations specified, may be reinstated by payment within 60 days from date of suspension of all arrearages of every kind, including current assessments and all fines, dues, and assessments for which he would have been liable had he remained in good standing, with the proviso that the receipt of assessments or dues in case a suspended member is not in good health shall not have the effect of reinstating him, or entitling him or his beneficiaries to any rights under his certificate.

McIntyre was suspended for nonpayment of assessments in 1908, but in due season paid the dues and assessments for which he was in default. He was again suspended January 1, 1909, and again discharged his defaults and arrearages, and continued for a time to meet his payments, but was again suspended on June 1, 1909. On July 31, 1909, he paid all obligations for

which he was in default or arrears, and was not thereafter suspended. On September 14, 1909, while in good standing, he applied for a new certificate to one of his sons, the plaintiff herein, and, being unable to find the old certificate, made and delivered to defendant a waiver thereof, as a lost certificate under the rules of the association. October 13th following the society issued a new certificate, in the same amount and in favor of the beneficiary requested by McIntyre, and forwarded it to the local camp. Before it could be delivered, however, and on October 15, 1909, McIntyre died. Proofs of death were furnished. Payment having been refused, this suit was brought. Defendant, under the plea of general issue, set up, among other things, the by-laws of the society before referred to, McIntyre's various defaults and suspensions, his attempted reinstatements, and that at the time of each of said last three reinstatements McIntyre was afflicted with syphilis, and remained so afflicted until his death. It was also pleaded that at the time of the reinstatement of February 27, 1909, McIntyre was afflicted with certain other diseases, and that at the time of the reinstatement of July 31, 1909, he was afflicted also with chronic encephalitis, broncho-pneumonia, paralysis, and softening of the brain, and that by reason of these facts the certificate was null and void until and at the time of McIntyre's death.

Upon the trial plaintiff did not present the reissued benefit certificate, which was in defendant's possession. The furnishing of proofs of death was shown, and the proofs identified, but not offered in evidence by the plaintiff. At the conclusion of plaintiff's case, defendant moved for a directed verdict for lack of competent proof of (a) the existence of the contract sued on, (b) of the furnishing of sufficient proofs of death, and (c) for failure to establish McIntyre's good standing in the defendant society at the time of his death. The motion was overruled. Defendant then introduced testimony tending to show that McIntyre was suffering from syphilis and other serious diseases at the time of his reinstatement on July 31, 1909, and that he died from the disease first stated. There was also testimony tending to support a contrary conclusion. There was verdict and judgment for plaintiff.

A motion for a new trial, on the ground of newly discovered evidence, was overruled by Judge Swan, who tried the case. The latter having retired from the bench before the bill of exceptions was settled, another motion for a new trial was presented to his successor, Judge Angell, upon the ground that the latter had no authority to sign a bill of exceptions, and that defendant was therefore entitled to a new trial, as its only remedy. This motion also was overruled, and the bill of exceptions in fact signed by Judge Angell.

Beaumont, Smith & Harris, of Detroit, Mich., for plaintiff in error.

Clarence P. Milligan, of Detroit, Mich., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge (after stating the facts as above). [1] 1. Section 953 of the Revised Statutes formerly read:

"A bill of exceptions allowed in any cause shall be deemed sufficiently authenticated if signed by the judge of the court in which the cause was tried, or by the presiding judge thereof, if more than one judge sat on the trial of the cause, without any seal of court or judge being annexed thereto."

In 1899 the Supreme Court held that under this statute a bill not signed by the judge who tried the cause, but by his successor in office, is not sufficiently authenticated. Malony v. Adsit, 175 U. S. 281, 20 Sup. Ct. 115, 44 L. Ed. 163. The amendment to the statute made the following year provided that:

"In case the judge before whom the cause has heretofore been or may hereafter be tried, is, by reason of death, sickness or other disability, unable

to hear and pass upon a motion for a new trial and allow and sign said bill of exceptions, then the judge who succeeds such trial judge, or any other judge of the court in which the cause was tried, holding such court thereafter, if the evidence in such cause has been or is taken in stenographic notes, or if the said judge is satisfied by any other means that he can pass upon such motion and allow a true bill of exceptions, shall pass upon said motion and allow and sign said bill of exceptions," but that in case such judge is satisfied "that he cannot fairly pass upon said motion, and allow and sign said bill of exceptions, then he may in his discretion grant a new trial to the party moving therefor." 31 Stat. at L. 270.

It is conceded that Judge Swan's resignation rendered him incapable of signing and settling a bill of exceptions. The question is whether such legal incapacity constitutes a disability under the statute. Defendant contends that the disability contemplated by the statute is physical or mental disability, arising from either death, sickness, insanity, or disorder of like character, by reason of which the judge was disabled from the performance of judicial functions; and such was the construction put upon the statute by the Circuit Court of Appeals for the Seventh Circuit. Western Dredging Co. v. Heldmaier, 111 Fed. 123, 125, 49 C. C. A. 264. But, with all deference to that court, we are unable to follow this decision.

Among the dictionary definitions of "disability" is "incapacity to do a legal act." Anderson's Dictionary of Law. Under this definition, which we deem appropriate, Judge Swan was disqualified to sign and settle the bill of exceptions, for he lacked legal capacity to do so.

State v. City of Newark, 27 N. J. Law, 185, is a case in point. The statute there involved provided that, in case of death or disability of one or more of the transportation commissioners provided for by the act, it should be lawful to supply the place so vacated. It was held, as stated in the opinion, that the word "disability" is "extensive enough to cover, and was designed to cover, any cause which prevented the commissioners from acting," and so included a resignation.

The trial had been fully reported stenographically, and a full transcript of the notes made. The requests to charge presented by both parties were on file. Judge Angell was of opinion that he could fairly and intelligently settle the bill of exceptions, and that it was his duty to do so. Penn Mutual Life Ins. Co. v. Ashe (C. C. A. 6) 145 Fed. 593, 596, 76 C. C. A. 283, 7 Ann. Cas. 491. In this view we concur. We see no merit in the suggestion that Judge Angell had no power to act on the bill of exceptions without first hearing the motion for a new trial, which he could not do, because such motion had already been heard and denied by Judge Swan.

The motion for new trial, presented to Judge Angell, was therefore properly overruled.

[2] 2. We pass by the motion for directed verdict made at the close of plaintiff's case, because defendant, by presenting testimony, waived its exception to the denial of the motion. Mt. Adams, etc., Rv. Co. v. Lowery, 74 Fed. (C. C. A. 6) 463, 465, 20 C. C. A. 596; Big Brushy Coal, etc., Co. v. Williams (C. C. A. 6) 176 Fed. 529, 532, 99 C. C. A. 102.

But defendant asked an instruction at the close of the trial that it was entitled to verdict, for the reasons, among others, that plaintiff did not produce or offer the benefit certificate, or show that the insured was a member in good standing at the time of his death. The notice attached to defendant's plea expressly alleged that:

"On the 13th day of October, 1909, the said society issued a certain other benefit certificate, being also numbered 228,739, in the amount of three thousand dollars ($3,000), to the said George H. McIntyre," etc.

The certificate referred to is apparently the one in suit.

[3] Defendant concedes that under Michigan Circuit Court rule 7 the facts contained in the notice are admissions, and need not be proved, but says that this rule has not been adopted by the United States Circuit Courts. Common-law rule No. 44 of the Circuit Courts of the United States for the Districts of Michigan, declares that, in the absence of special provision by those rules, the state circuit court rules shall govern proceedings. ·

[4, 5] Moreover, the certificate was in defendant's possession at the trial. It is printed in the record, and presumably was presented by defendant. There was thus competent evidence of the existence of the certificate, and it is immaterial that its contents and terms are not shown by the plea. The plea alleged, however, that the new certificate was not actually delivered to McIntyre before his death, and an officer of the head camp so testified. There was thus no formal acceptance by the insured of the new certificate. There is no suggestion in the record that the insured had not an absolute right to make the change of beneficiary in question, and the record does not show that actual delivery to or formal physical acceptance by a member of a reissued certificate, differing from the old only in the name of the beneficiary, is required by the laws of the society in order to make it effective, although a blank form for such acceptance is printed on the certificate, which is apparently the same form used for the first or original certificate.

On the other hand, the waiver of the lost certificate, put in evidence by defendant, expressly stated that, in consideration of the delivery to McIntyre of a new certificate made payable to plaintiff, the insured waived "all rights and benefits which he has or ever may have under said benefit certificate * * * and which he now declares to be null and void. He accepts the new benefit certificate in place thereof," etc. Moreover, it appeared by letters to plaintiff from the clerk of the local camp that the head camp recognized plaintiff as the sole beneficiary, and blanks for proofs of death were furnished him; and while these letters were objected to as incompetent, immaterial, and irrelevant, it does not clearly appear that they were objected to as hearsay. The question whether the head camp was bound by any attempted waiver on the part of the clerk of the local camp is not involved.

The new certificate purports on its face to have been issued October 13th, which was two days before McIntyre's death, and the plea asserts the issue on October 13th. It is true that in the testimony of a witness for defendant the date of issue was given (as

printed in the record) as October 15th. But this is immaterial, for there is no claim that the issue occurred after McIntyre's death.

In our opinion, the record did not justify a direction of verdict on the ground of failure to introduce the certificate, or to show that McIntyre was a member in good standing at the time of his death. We may add that defendant's counsel stated in open court, at the very commencement of the trial, that:

"It is stipulated by and between the parties to this cause, here in open court, that the former beneficiaries, Glenn, Ethel, Florence, and Bertha McIntyre, and Mary C. McIntyre, waive all right of action they may have by reason of the policy issued by this defendant society upon the life of George H. McIntyre wherein they were named as beneficiaries, and that their counsel here in open court consents that any judgment recovered, or that might be recovered, upon that or any other policy in the defendant society, the proceeds of which would have gone to Florence and Bertha McIntyre, minors, be paid into court until the proper legal distribution of same can be made under order of the proper tribunal."

The beneficiaries so named are the widow of insured and the four children, other than plaintiff, named in the lost and surrendered certificate.

[6] 3. The proofs of death were furnished by plaintiff in due course, and were in defendant's possession at the trial. They were not introduced by plaintiff before resting. The defendant cannot complain of this, for after its motion for directed verdict was denied, and after the court had ultimately relieved plaintiff of obligation to offer the proofs in evidence, defendant itself introduced them. Under the charge of the court, defendant was given the full benefit of the admissions contained in the proofs as to the cause of death, and it has suffered no legal prejudice by the course taken.

[7] 4. It is earnestly urged that the evidence conclusively shows that the insured was in ill health on July 31, 1909, the date of his reinstatement, and that it was error not to direct a verdict for defendant as asked. The alleged syphilitic condition was principally relied on by defendant. The testimony strongly tended to show that deceased had syphilis when reinstated, and that he died from that disease. If this evidence is conclusive, verdict for defendant should have been directed; otherwise, not.

There was evidence, on the one hand, that deceased had partial paralysis about July 1, 1909; that such condition frequently results from syphilis; that his attending physician suspected that disease; that on August 3d decedent entered a hospital at Lansing, which he left August 12th; that he went to the University Hospital at Ann Arbor September 22d, where he was treated by Dr. Camp, and where he remained until his death on October 15th; that while at Ann Arbor his disease was diagnosed by Dr. Camp as cerebral syphilis and he treated therefor; that a post mortem examination conducted by Dr. Warthin revealed softening of the tissues of the floor of the right ventricle of the brain, arterial sclerosis, patches of bronchial pneumonia, and chronic vesiculitis. Dr. Warthin testified that he "decided from the brain tissue and the conditions found there, and from the condition of the arterial walls, that a sclerosis condition existed gen-

erally of a syphilitic nature." He expressed the unqualified opinion that death resulted from syphilis, and that the disease existed on or before July 31st.

On the other hand, there was testimony from acquaintances and members of decedent's family that, aside from partial paralysis or numbness of one side for a short time in July or August, including the time of his treatment in the Lansing hospital, decedent was apparently in good health during those months; that, except for a short time, he did heavy farm work and during long hours; that he at no time gave any of the outward symptoms frequently, if not usually, found in tertiary syphilis. The physician who attended him in July or August (outside the hospital) disclaimed finding any satisfactory proof of syphilis. The physician in attendance at the Lansing hospital did not treat decedent for syphilis, and testified that when the latter left the hospital he was troubled but little with numbness. Dr. Camp testified that decedent did not respond to the treatment for syphilis, and that the Wasserman blood test was negative—"as far as the blood indicated, there was a complete absence of syphilis." There was a dispute whether such negative test was highly important either way. There was no evidence of the finding of the syphilitic germ in the tissues, and the significance of this fact was also more or less in conflict. There was testimony of experienced medical men that the data furnished by the post mortem was not sufficient, in the absence of a positive blood test or the finding of the syphilitic germ, to determine whether the conditions were syphilitic. There was also testimony of experienced medical men that decedent might have been perfectly healthy on the 31st of July and die of syphilis on the 16th of October (doubtless intended for 15th).

[8] The rule is well settled that it is the duty of the court, when a motion is made to direct a verdict, to take that view of the evidence most favorable to the party against whom the instruction is asked (Nelson v. Ohio Cultivator Co. [C. C. A. 6] 188 Fed. 620, 629, 112 C. C. A. 394, and cases cited), and that the mere fact that there is a preponderance of the evidence in favor of the party moving for the instructed verdict does not require the judge to take the case from the jury, even though it might justify the granting of a new trial (Rochford v. Pennsylvania Co. [C. C. A. 6] 174 Fed. 81, 83, 98 C. C. A. 105). The burden of proof was upon the defendant to show the fact that the insured was in ill health at the time of his reinstatement.

In our opinion the evidence presented a question of fact for the jury, however much the court might be impressed by the testimony on the part of defendant.

[9] 5. Medical witnesses for plaintiff were allowed to testify, in substance, in response to hypothetical questions, that from data given by Dr. Warthin regarding the showing made by the post mortem they would be unable to say, in the absence of a positive blood test or of finding germs in the tissues, whether death was due to a syphilitic affection; and one or more of these witnesses were allowed to testify that it was doubtful, from various things found by Dr. Warthin on

the autopsy, whether they were caused by syphilitic affections. The hypothetical questions to the different witnesses were put in varying forms, but it is evident they all were intended to take into account only the specific conditions testified to by Dr. Warthin (viz., softening of the brain, arterial sclerosis, bronchial pneumonia, and chronic encephalitis), and to exclude, as a conclusion, the statement that one or more of these conditions were syphilitic in character.

Defendant's counsel insisted that the syphilitic condition "is a recognized condition and should be so described," and that the admission of the testimony in question was erroneous, "not only because the exact data for the hypothetical question does not exist on the record, but also because it permits the physicians to testify to their inferences from Dr. Warthin's evidence." The decision of this court in Manufacturers' Accident Indemnity Co. v. Dorgan, 58 Fed. 949, 7 C. C. A. 581, 22 L. R. A. 620, is invoked. In that case a witness, after saying that he had heard the testimony in the case regarding the autopsy, was asked whether, in his judgment, from that testimony he would "say that the autopsy was such as to enable a physician to state with any degree of certainty the cause of the death." Judge Taft said that the question "was clearly incompetent, because it asked the witness, who was a physician, to make his own inference as to what the evidence of the other witnesses tended to show, and then, upon such inference, to give his opinion."

The pivotal question is whether Dr. Warthin's statement that the various conditions mentioned were syphilitic in character was a statement of a fact or a conclusion from facts. It is evident that if such statement is to be treated as a fact, viz., that syphilis existed at death, plaintiff's witnesses would practically be limited to saying whether, upon the evidence of syphilitic disease of the brain, a syphilitic sclerosis, with bronchial pneumonia and chronic vesiculitis, the insured had syphilis on July 31st, or (as evidence of that fact) whether he died from syphilitic affections. Dr. Warthin testified fully to what he found, refreshing his recollection from his notes. We think it the reasonable view that his testimony as to syphilitic conditions should, for the purposes of hypothetical questions, be regarded as conclusions from facts, and that plaintiff's witnesses were not compelled to adopt such conclusions in determining whether the data were sufficient to justify Dr. Warthin's opinion as to the cause of death. If this is the correct view, it follows that the Dorgan Case does not apply.

[10] 6. The motion for new trial, on the ground of newly discovered evidence, was addressed to the judicial discretion of the court. This discretion was not abused, and the denial of the motion is not subject to review.

We have not discussed all the assignments of error. Those not discussed have, however, all been carefully considered. The conclusion we reach is that no error has been committed to defendant's prejudice, and the judgment below is accordingly affirmed, with costs.