HALES v. MICHIGAN CENT. R. CO.

(Circuit Court of Appeals, Sixth Circuit.  November 7, 1912.)

No. 2,231.

1. RAILROADS (§ 313*)—CROSSING ACCIDENT—NEGLIGENCE—FAILURE TO RING BELL.

Gen. Code, Ohio, § 8853, requires every locomotive to be equipped with bell and whistle, and that the whistle be sounded at least 80 rods before a crossing is reached, and the bell rung until the engine passes the crossing, failure to comply being penalized by section 8855; and section 8856 imposes on the railroad company liability in damages to a person injured by such neglect. *Held*, that such requirement was applicable to an action for death of a street railway motorman at a crossing, alleged to have resulted from the failure of the railroad operatives to ring the bell as the train approached the crossing.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1002, 1004, 1005; . Dec. Dig. § 313.*

Duty to give warning signals at crossing, see note to Chesapeake & O. Ry. Co. v. Steele, 29 C. C. A. 90.]

2. RAILROADS (§ 350*)—CROSSING ACCIDENT—QUESTION FOR JURY.

In an action for death at a railroad crossing, six witnesses, who were apparently so situated that they could have heard the bell of an approaching engine if it had been rung, testified that they did not hear it, they not being permitted to testify that the bell was not rung; while the fireman of the locomotive, on cross-examination, testified that he heard the bell. *Held*, that the weight of the testimony was for the jury, dependent on the credibility of the witnesses, their locations and opportunity to hear, their interest in or the attention they gave to the subject, the condition of their sense of hearing, etc.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

3. TRIAL (§ 178*)—DIRECTION OF VERDICT—WEIGHT OF EVIDENCE.

On a motion to direct a verdict, it is not within the province of the court to weigh the evidence; but plaintiff is entitled to have the most favorable view of the evidence taken in his behalf.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 401–403; Dec. Dig. § 178.*]

4. NEGLIGENCE (§ 136*)—PROXIMATE CAUSE—QUESTION FOR JURY.

What is the proximate cause of an injury is not a question of science or legal knowledge, but is to be determined ordinarily as a question of fact by the jury, in view of the circumstances of fact attending it.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

5. RAILROADS (§ 337*)—CROSSING ACCIDENT—NEGLIGENCE—PROXIMATE CAUSE—CONCURRING NEGLIGENCE.

Decedent, a street railway motorman, while attempting to drive his car across defendant's railroad tracks pursuant to a negligent direction by his conductor to "come ahead," was struck and killed by a train which approached without ringing the bell, in violation of Gen. Code Ohio, § 8853, requiring every locomotive to be equipped with a bell, which should be rung continuously from a point 80 rods before a crossing was reached until the engine had passed the crossing. *Held*, that the railroad company's failure to ring the bell on approaching the crossing was at least a concurring cause of the accident, and that it was error, therefore, to direct a verdict for the railroad company on the theory that the

negligence of the conductor was the sole proximate cause of decedent's death.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1090–1095; Dec. Dig. § 337.*]

6. RAILROADS (§ 266*)—ACCIDENTS AT CROSSINGS—JOINT TORT-FEASORS.
  Where two corporations were joint tort-feasors in causing a railroad crossing accident, plaintiff was entitled to sue either or both of them.
  [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 854–858; Dec. Dig. § 266.*]

7. WITNESSES (§ 269*)—CROSS-EXAMINATION—SCOPE.
  In the federal courts, the cross-examination of witnesses is limited to the matters embraced in the examination in chief, subject to certain exceptions.
  [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 949–954; Dec. Dig. § 269.*]

In Error to the Circuit Court of the United States for the Western Division of the Northern District of Ohio; John M. Killits, Judge.

Action by James Hales, as administrator of the estate of James K. Myers, against the Michigan Central Railroad Company. Judgment for defendant, and plaintiff brings error. Reversed.

Charles A. Thatcher and Guilford B. Keppel, both of Toledo, Ohio, for plaintiff in error.

Emery D. Potter, of Toledo, Ohio, and Henry Russel, and Frank E. Robson, both of Detroit, Mich., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

PER CURIAM. This was an action for personal injuries resulting in the death of plaintiff's decedent, Myers. At the close of the evidence offered by plaintiff, on motion of defendant, a verdict was directed and judgment entered in its favor; and the case is prosecuted here on error.

Myers received his injuries on the evening of February 15, 1908, while in the employ as motorman of an electric street railroad company and engaged in operating one of its cars across the main track of the defendant at a street crossing in Lucas county; the electric car being struck by a passenger engine (with train) of defendant at such crossing. The railroad crossing is in Phillips avenue. This avenue runs east and west, and defendant's main track runs in a north and south direction to and across the avenue and for some distance north of it. Within less than 70 feet west of defendant's main line is the line of the Lake Shore & Michigan Southern, which runs parallel to that of defendant. The defendant maintains one siding across the avenue east of and adjacent to its main track, and the Lake Shore two adjacent sidings west of its main track. Four protecting gates had been placed in position to lower and raise across the avenue, one on each side of the tracks of each of such companies, and had been operated from a tower by one man in the joint employ of the two railroad companies. An electric gong had also been placed in position and in use at this crossing by the defendant. All of the gates and the

electric gong were out of repair and not in condition to be operated at the time of the collision, and the flagman was absent. The street railroad track runs lengthwise of the avenue and across the steam tracks.

The usual course followed by the railroads to protect the crossing when the gates were in order was to operate them together from the tower, and when not in order to have the towerman act as flagman at the crossing. The gong, when in order, was also sounded when trains were passing. It seems not to have been the practice to permit street cars or vehicles of any kind to stand between the inner gates during the passage of trains; indeed, the car that deceased was operating at the time of the collision was longer than the distance between such gates. Shortly before the collision two street cars going in opposite directions had reached the crossing. The one on the east side, bound west, was standing on a switch awaiting the crossing of the car on the west side, and the latter was the one that was struck by the locomotive. When this car approached the Lake Shore track, it was stopped, and its conductor, in obedience to a statutory provision in this behalf, went forward to look for approaching trains, and to signal the motorman to cross the tracks with his car, if the conductor found them clear. The conductor passed over the Lake Shore tracks, and thence along the avenue, either to or close to the main track of defendant, when with his lantern he signaled his motorman to come ahead. There was testimony tending to show that the habit of the motormen, on receiving such signals, was to put on power sufficient to start the car and drive it across the tracks of both roads, in order to avoid consequences of stalling in case of trouble with the trolley and wire. Upon receiving the conductor's signal, the motorman moved his car forward until its rear trucks had reached the Lake Shore tracks, when the conductor signaled to stop, indicating the approach of a train on defendant's track. There was testimony tending to show that this signal was received too late to stop the car, and that the prudent course to adopt was to put on additional power and endeavor to cross ahead of the approaching train; that the motorman adopted this course; that, owing to excessive speed of the train, the collision occurred when the rear truck of the street car had almost reached the railroad track; that the street car was severed, one portion being thrown to the west and the larger portion to the east of defendant's track, and the train running several hundred feet before it was stopped.

The grounds of the motion to direct in substance were (1) that no actionable negligence was proved against defendant; (2) that from the testimony adduced a presumption arose of contributory negligence of the motorman, and that this was the proximate cause of the injury. The conclusion reached by the learned trial court was that the act of the street railroad conductor in giving the signal to cross the track "was the last or proximate cause of the accident"; holding, further:

"This is, of course, not exonerating the Michigan Central Railroad Company [defendant] from carelessness or negligence, but it is simply applying

to the case the doctrine of proximate cause and finding the other company responsible for the accident to its motorman."

It is fairly to be inferred from this, we think, that the trial court believed the evidence tended to show negligence of defendant, but not contributory negligence of deceased.

[1] The question is whether the motion to direct was sustainable upon the theory that the only actionable negligence shown was that of the street car company. We shall lay to one side all that was shown respecting the condition of the gates and the gong and the absence of the flagman. That condition had existed for about two days, and for present purposes it may be assumed, without deciding, that the employés of both the steam railroad and street railroad were chargeable with notice of it. It was admitted by plaintiff's counsel, in argument, that the street car conductor was negligent; but, as it seems to us, that does not present the whole question of liability. There was testimony to the effect that neither the whistle nor the bell of the locomotive was sounded in the course of its approach to the crossing, that there was a heavy traffic, especially street railroad traffic, passing over this crossing daily, and that there were at the time obstructions to the view.

Section 8853 of the Ohio Statutes (4 Page & A. General Code, p. 349) in terms imperatively requires every locomotive used on such a track to be equipped with whistle and bell, and the whistle to be sounded at a distance of at least 80 and not further than 100 rods from the crossing, and the bell to be rung continuously until the engine passes the crossing; and a failure to comply with these provisions is, by section 8855, penalized, and section 8856 imposes on the railroad company liability in damages to a person or company injured by such neglect. The statute is general and comprehensive, and we perceive no sound reason why it was not applicable, at least the requirement as to the bell, in this instance. Rothe v. Pennsylvania Co., 195 Fed. 21, 24, 114 C. C. A. 627 (C. C. A. 6th Cir.). See, also, Street Ry. Co. v. Murray, 53 Ohio St. 570, 42 N. E. 596, cited below. We say the bell, because of a claim, made by defendant, that Phillips avenue is within the corporate limits of Toledo, and that an ordinance of that city prohibits sounding the whistle of a locomotive within such limits. We do not deem it necessary now to decide whether such an ordinance can prevail as against the terms of the statute, for the reason that the omission to ring the bell, if such omission occurred, presents the question of negligence of the railroad company quite as certainly as would the omission also to sound the whistle. Moreover, it is disputed that Phillips avenue is within the corporate limits.

[2] As many as six witnesses, who apparently were so situated as to hear the bell if it was rung (including the motorman on the car standing east of defendant's tracks and awaiting the crossing of the other car, as before stated), testified that they did not hear the bell; and the fireman of the locomotive, called by plaintiff to testify upon other subjects, was permitted, upon cross-examination, to testify that he heard the bell. The witnesses were not permitted to testify wheth-

er the bell was sounded or not, but simply whether they heard it. It is not contended that the testimony of the six witnesses was not admissible. The criticism upon it by the court below concerned its weight, especially as compared with the weight of the testimony of the fireman. But the weight of the testimony was a subject for the jury, and dependent upon many circumstances, such as credibility of the witnesses, their locations, their opportunity to hear, their interest in or the attention they gave to the subject, the condition of their sense of hearing, and the like. O'Connell v. Pennsylvania Co., 118 Fed. 991, 992, 55 C. C. A. 483 (C. C. A. 6th Cir.); Baltimore & O. R. Co. v. O'Neill, 186 Fed. 14, 15, 108 C. C. A. 115 (C. C. A. 6th Cir.); Menard v. Boston & Maine Railroad, 150 Mass. 387, 388, 23 N. E. 214; Johanson v. Boston & Maine Railroad, 153 Mass. 57, 59, 26 N. E. 426; Davis v. N. Y. & N. H. R. R., 159 Mass. 532, 533, 34 N. E. 1070; Lamoureux v. N. Y., etc., R. R., 169 Mass. 338, 339, 47 N. E. 1009; Purnell v. R. R., 122 N. C. 832, 837, 29 S. E. 953; C. & A. R. R. Co. v. Dillon, 123 Ill. 570, 577, 15 N. E. 181, 5 Am. St. Rep. 559; 1 Wigmore on Ev. § 664, and notes; Texas & Pac. Railway Co. v. Cody, 166 U. S. 606, 612, 17 Sup. Ct. 703, 41 L. Ed. 1132.

[3] On the motion to direct, the plaintiff was entitled to have taken in his behalf the most favorable view of the evidence. Erie R. Co. v. Rooney, 186 Fed. 16, 19, 108 C. C. A. 118 (C. C. A. 6th Cir.).

And, moreover, it is not within the province of the court on such a motion to weigh the evidence. Mitchell v. Toledo, St. L. & W. R. Co., 197 Fed. 528, 533 (C. C. A. 6th Cir.). See, also, Rochford v. Pennsylvania Co., 174 Fed. 83, bot. 98 C. C. A. 105 (C. C. A. 6th Cir.). We are therefore of opinion that it was error practically to withdraw the testimony tending to show that the bell was not sounded, and so to reach the conclusion that the proximate cause of the injury was the first signal given by the street railway conductor to the motorman.

[4] The proximate cause of an injury is usually a question for the jury. As Mr. Justice Field said in Milwaukee, etc., Ry. Co. v. Kellogg, 94 U. S. 469, 474 (24 L. Ed. 256):

"The true rule is, that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it."

See Southern Pac. Co. v. Yeargin, 109 Fed. 436, 439, 48 C. C. A. 497 (C. C. A. 6th Cir.); Winters v. Baltimore & O. R. Co., 177 Fed. 44, 50, 100 C. C. A. 462 (C. C. A. 6th Cir.); Erie R. Co. v. White, 187 Fed. 556, 559, 109 C. C. A. 322 (C. C. A. 6th Cir.).

[5] The least, then, that can be said of the case, as it was presented on the motion to direct, was that the testimony tending to show failure of the railroad company to ring the bell as it approached and while crossing the avenue presented a cause co-operating with the act of the conductor in bringing about the injury; in short, the causes were concurrent. Memphis Consol. Gas & Electric Co. v. Creighton, 183 Fed. 552, 555, 106 C. C. A. 98 (C. C. A. 6th Cir.).

[6] It scarcely need be stated that, if the two railroad companies

were joint tort-feasors, it was open to the plaintiff to sue either or both of them. It will not escape attention that in Street Ry. Co. v. Murray, 53 Ohio St. 570, 572, 42 N. E. 596, relied on by defendant, the administratrix brought the action and recovered against both railroads, and that the street railroad conductor in that case did not go forward to see whether it was safe to cross, but relied on the railroad watchman, who called to the employés of the street railroad to "come ahead," and at the same time sounded the gong signal, either to indicate that they should cross promptly, or to warn them that a train was coming and not to attempt to cross, though the evidence on this point was conflicting. The effect of the decision, therefore, was to recognize the acts of the agents of the two railroads as concurrent causes, notwithstanding the statutes specially applicable in that case (as here) to each.

[7] Since the case must be tried again, we refrain from passing upon other assignments of error. For instance, the general rule of practice in the federal courts limiting cross-examination to the matters embraced in the examination in chief, subject to certain well-known exceptions, is settled; and no doubt it will be observed. O'Connell v. Pennsylvania Co., supra; McKnight v. United States, 122 Fed. 926, 928, 61 C. C. A. 112 (C. C. A. 6th Cir.).

The judgment below will be reversed, with costs.