**BEGERT v. PAYNE, Liquidating Agent.**

(Circuit Court of Appeals, Sixth Circuit. July 19, 1921.)

No. 3496.

**1. Trial ⬁178—Plaintiff entitled to benefit of inferences on motion for directed verdict.**

On a motion by defendant for an instructed verdict, it is the duty of the trial judge to give plaintiff the benefit of every fair inference which might reasonably be drawn by the jury from the evidence, guided only by sound processes of reasoning and applicable principles of law.

**2. Trial ⬁140 (1)—Credibility of witnesses is for jury.**

The credibility of witnesses is peculiarly a question for the jury.

**3. Trial ⬁143—Evidence contradicting prima facie case does not authorize directed verdict.**

Where plaintiff produces material evidence sufficient, if believed and uncontradicted, to warrant a verdict, no amount of contradictory evidence will authorize the trial judge to take the question of its effect and weight from the jury; the testimony not being contrary to reason or to natural and physical laws.

**4. Trial ⬁169—When verdict properly directed stated.**

A verdict cannot properly be directed for defendant merely because the trial judge feels that, should the jury find in plaintiff's favor, he would regard it as his duty in the exercise of a sound judicial discretion to set the verdict aside; the test being whether there is such an utter absence of substantial evidence as to make it his duty as matter of law to

---

⬁For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

set the verdict aside, independently of the exercise of discretion, and without reference to how greatly the court may think the conflict in the testimony to preponderate in defendant's favor.

5. **Railroads ☞350(7)—Evidence held to make question for jury as to ringing of bell.**

In an action for injuries sustained in a crossing collision, evidence, though negative in character, *held* sufficient to make a question for the jury as to whether the bell on the engine was ringing.

6. **Evidence ☞584(1)—Testimony of employees of defendant neither disregarded nor accepted as conclusive.**

In an action for injuries sustained in a crossing collision, the testimony of the train employees that the bell was ringing should not be discredited merely because of their employment, nor accepted as conclusive merely because they were in a position giving them better means of knowledge than other witnesses.

7. **Railroads ☞340(2)—Liable for injury from concurrent negligence of trainmen and another.**

If the negligence of those in charge of a train colliding with an automobile in which plaintiff was riding was a proximate cause of the collision, plaintiff is entitled to recover, even though the driver of the automobile was also negligent, unless his negligence is imputable to plaintiff.

8. **Judgment ☞251(2), 256(1)—Recovery not defeated by negligence of plaintiff, or another imputed to her, when not pleaded or found.**

In an action for injuries sustained in a crossing collision, relief cannot be denied plaintiff because of her negligence, or that of the driver of the automobile in which she was riding, where contributory negligence was not pleaded, and the court, in directing a verdict for defendant, made no finding thereon.

9. **Negligence ☞136(30)—Driver's negligence held not clearly imputable to passenger as matter of law.**

The negligence of the driver of an automobile was not so clearly imputable as matter of law to an employee of the driver, riding in the rear seat on an errand of her own, and testifying that she had nothing to do with driving the car and had never driven one, as to warrant the affirmance of a judgment on a directed verdict for defendant, where the question of imputed negligence had not been considered by the trial court.

10. **Railroads ☞350(21)—Passenger not negligent as matter of law in not attempting to make driver stop.**

Where cars standing on a side track obstructed the view of the main track at a railroad crossing, one riding in the rear seat of her employer's automobile, and having no authority over him, was not guilty of personal negligence as a matter of law in not attempting to make him stop the automobile within the 8 or 9 feet between the two tracks; she not having seen the approaching train.

11. **Railroads ☞346(5)—Inference of automobile driver's freedom from negligence.**

In an action for injuries in a collision between a railroad train and an automobile, there is an inference of the automobile driver's freedom from negligence in the reasonable use of his senses of sight and hearing, coexistent with the presumption of due care on the part of the engineer.

12. **Railroads ☞350(9)—Attempted warning held not conclusive of railroad's freedom from negligence.**

In an action for injuries sustained in a crossing collision, if cars standing on a side track and obstructing the view required the train crew to use additional care, the attempt of a third person to warn the automobile driver of the train's approach *held*, under the evidence, not controlling on the question of the driver's negligence, and not as a matter of law to relieve the railroad from the consequence of its alleged negligence.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
274 F.—50

In Error to the District Court of the United States for the Northern District of Ohio; D. C. Westenhaver, Judge.

Action by Martha Begert against John Barton Payne, as Liquidating Agent, etc. From a judgment for defendant, plaintiff brings error. Reversed, with instructions to award new trial.

R. B. Newcomb, of Cleveland, Ohio (Newcomb, Newcomb & Nord, of Cleveland, Ohio, on the brief), for plaintiff in error.

Thomas M. Kirby, of Cleveland, Ohio (Squire, Sanders & Dempsey, of Cleveland, Ohio, on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. The automobile, in which plaintiff in error (hereinafter called plaintiff) was riding on the Lincoln Highway, through the village of East Union, Ohio, was struck at a crossing by a passenger train of the Pennsylvania Railroad; plaintiff receiving serious personal injuries. The two other occupants of the automobile were killed. The highway at the point in question runs east and west; the railroad, substantially north and south. The automobile was traveling east; the colliding train came from the north. The automobile (left-hand drive) was being driven by one Kraus, plaintiff's employer, who alone occupied the front seat. The right-hand side of the back seat was occupied by plaintiff; the left-hand side by the driver's mother, who was thus on the same side of the approaching train as was the driver. All three were bound for Orrville; the driver and plaintiff each on a separate and personal errand. The side curtains were on, but plaintiff testified that the "view to look out through the curtains (apparently through a 'sort of isinglass') was not interrupted."

At the point of collision the highway was about 55 feet wide, having in its center a brick pavement 11½ feet wide. There were two tracks, the westerly being a side track, extending both north and south of the highway; the easterly being the main track. The automobile thus had to cross the side track before reaching the main track, on which the collision occurred. A few feet west of the side track, and a short distance north of the highway, was an elevator. At the time of the collision there was on the side track a string of freight cars extending north from a point within the 55-foot roadway and only a few feet north from its paved portion. There was testimony that these cars filled practically the entire length of the side track to the north, estimated by some of the witnesses as from 300 to 500 feet. There were also freight cars on the side track south of the highway, as well as a warehouse and coal bin. A little west of the elevator (and thus on the north side of the highway) was a dwelling house, and farther west (about 15 rods from the crossing) was a store. Beyond the freight cars to the north, and several hundred feet from the crossing, was a piece of woods. The track ran practically straight for about a quarter of a mile north of the crossing, and could be seen at intervals during a distance of a quarter of a mile by one approaching on the highway from

the west, but only at intervals, by reason of the woods, the freight cars, the elevator, the dwelling house, and the store.

At the southeast intersection of the highway and the railroad, and opposite the box cars on the south part of the side track, was a passenger station, with a platform extending to the south line of the highway. There was testimony that had there been no cars on the side track, one driving east on the highway, when on a line even with the side of the elevator, could see 50 to 100 feet to the north on the main track, and beyond the point where the elevator would obstruct the view could see north on the main track to the woods, but that with the box cars upon the side track the nearest point at which a view of the main track to the north for a considerable distance could be had would be perhaps a quarter of a mile from the crossing, and that one could not see around the end of the nearest box car until the front wheels of the automobile were 5 to 10 feet from the main track.

The grounds of negligence relied upon were: (a) That the train was operated without sounding the whistle or ringing the bell, or giving any warning of the train's approach to the crossing; (b) negligently placing the box cars upon the side track and in the highway, thereby blocking the view of the approaching train from the automobile; (c) that the engine crew approached the highway crossing without having the train under proper control, when it knew that the view of the train was blocked by buildings and box cars standing upon the side track; (d) running over the crossing without signal or warning of approach.

At the close of the testimony the trial judge directed verdict for defendant, upon the ground that no question of fact for the jury was presented respecting defendant's alleged negligence; the court stating that in his opinion there was no substantial conflict in the evidence over the proposition that both the whistle and bell were sounded, and, in effect, that if the presence of the box cars in the highway called for additional care in operating the train, the evidence showed the exercise of additional care in the sounding of whistle shortly before the crossing was reached. The court laid stress upon the testimony that a volunteer, who apparently saw the train coming, tried to give warning of its approach. The court further said that according to the "almost undisputed testimony" the automobile approached the crossing at a higher rate of speed than that of the train.

[1-4] We think the trial court clearly erred in directing verdict for defendant. It is a commonplace that, upon a motion by a defendant for instructed verdict, it is the duty of the trial judge to give the plaintiff the benefit of every fair inference which might reasonably be drawn by the jury from the evidence, only guided by sound processes of reasoning and applicable principles of law. The credibility of witnesses is peculiarly for the jury. If the plaintiff produced material evidence, sufficient, if believed and uncontradicted, to warrant a verdict, no amount of contradictory evidence would authorize the trial judge to take the question of its effect and weight from the jury (Rochford v. Pennsylvania Co. [C. C. A. 6] 174 Fed. 81, 83–84, 98 C. C. A. 105); this rule being subject (so far as material here) only to the limitation

that testimony contrary to reason or contrary to natural and physical laws cannot support a verdict. Rochford v. Penn. Co., supra; Penn. Co. v. Whitney (C. C. A. 6) 169 Fed. 572, 576, 95 C. C. A. 70. A verdict cannot properly be directed for defendant merely because the trial judge feels that, should the jury find in the plaintiff's favor, he would regard it his duty, in the exercise of a sound judicial discretion, to set the verdict aside. The test is whether there is such an utter absence of substantial evidence as to make it his duty, as matter of law, to set the verdict aside independently of the exercise of discretion, and without reference to how greatly the court may think the conflict in testimony to preponderate in favor of defendant. We deem it unnecessary to do more than refer to the decisions of this court. Nelson v. Ohio Cultivator Co., 188 Fed. 620, 629, 112 C. C. A. 394; McIntyre v. Modern Woodmen, 200 Fed. 1, 121 C. C. A. 1; Hettler Lumber Co. v. Olds, 221 Fed. 612, 615, 137 C. C. A. 336; Richards v. Mulford, 236 Fed. 677, 679, 150 C. C. A. 9.

[5] Plaintiff seems now to concede that the whistle was blown about 1,400 feet from the crossing, and again for the station stop, but insists that it was not again sounded within 700 feet of the station. There was substantial conflict in testimony whether the bell was ringing as the train approached the crossing. While there was abundant testimony that it was ringing, not only did plaintiff testify that she was looking and listening from the time the store was passed until the collision, and that she heard no bell or whistle and saw no engine or train;[1] but other witnesses, who were in position to have heard the bell, if it had been ringing, testified that they were listening for it, but failed to hear it. Others still who testified to hearing the bell, were confronted with written statements to the effect that they heard no bell. Again, while both the engineer and fireman testified that the bell (which was operable automatically) was ringing for a considerable time before and up to the time of the collision, and the engineer testified to turning on the automatic ringer at the whistling post, the fireman does not so testify, and both the engineer and fireman say the latter had his hand on the bell rope. Moreover, the engineer testified that, upon leaving the engine after the collision he turned off the automatic ringer. There was, however, testimony that the bell was ringing continuously after the collision, and after it might be inferred that the engineer had left the engine.

---

[1] She testified: "As I passed the grocery store I did look between the grocery store and elevator, between the houses. I did not see any train coming. The last time I looked north was as we were approaching the elevator, on the west side and to the north of the elevator. I did not see any train at that time. As we passed the elevator, and before we came to the box car, I looked up to the north, but you can't see. I know where that driveway is between the elevator and the cars that were on the side track. I don't know as I looked through the driveway to the north. That would be the last opportunity to look until we got almost onto the track. I don't remember if I looked at that point or not. Naturally I would be listening at all times. I was looking, and I will say positively I was listening as I approached the crossing from the time I passed the grocery store until I was struck."

[6] In this conflict of the testimony it cannot be said that the jury might not reasonably conclude that the engineer was mistaken about the automatic ringer being on, and possibly that he turned it off when he supposed he was turning it on, and finally turned it on after the collision, supposing he was turning it off, and such theory might well account for the conflict in testimony, including that of a witness who testified that he heard the bell after the collision, but was unable to say that he had heard it before that time. True, the testimony of the train employees should not be discredited merely because of their employment; but it is equally true that it is not necessarily to be accepted as conclusive merely because the employees are in position which should give them better means of knowledge. Means of knowledge should be taken into account. Other things being equal, affirmative testimony is better than negative; but in the case we have here these questions, in our opinion, were addressed merely to the weight of the testimony. Hales v. Mich. Central R. R. Co. (C. C. A. 6) 200 Fed. 533, 536, 118 C. C. A. 627.

We think plaintiff presented substantial testimony at least to the effect that the bell was not ringing when the crossing was approached. Her testimony to this effect cannot, in our opinion, be said as matter of law, to be contrary to reason or to physical and natural laws. It was open to the jury to find that she was in a position where she could have heard the bell if it were ringing. The credibility of her testimony was thus for the jury; and this is so, even if the jury might think that she was mistaken about the whistle. As already said, her testimony as to nonringing of the bell was corroborated by other testimony.

[7, 8] We therefore think it could not be said, as matter of law, that defendant was not negligent and that the driver's negligence was the sole proximate cause of the collision. This being so, plaintiff had the right to go to the jury on the question of defendant's negligence as a proximate cause, and if finding were had in her favor to recover from defendant even if the driver were also negligent [2] (unless his negligence was imputable to plaintiff), provided plaintiff is not to be charged with negligence directly contributing to the collision. However, contributory negligence was not pleaded; and the grounds of the court's conclusion did not embrace a finding of plaintiff's personal negligence, or of a negligence on the part of the driver imputable to plaintiff. Therefore, as the case stood below, relief cannot be denied plaintiff merely because of her own or the driver's negligence. The judgment for defendant must accordingly be reversed.

[9] Defendant insists, however, that as a matter of law, in view of plaintiff's testimony, the driver's negligence was imputable to her. If this were clearly so, we should deem it our duty so to declare, for the reason that the case must be tried again, and perhaps on further pleadings. But the proposition is not clearly right. The case does not fall within the decision of this court in Hurlburt v. Erie R. Co., 221

[2] Hales v. Mich. Central R. R. Co., supra, 200 Fed. at page 537, 118 C. C. A. 627.

Fed. 911, 137 C. C. A. 481. There the wife, who apparently sat beside her husband, was participating with him in looking out for the train, in connection with and for the benefit of his driving of the horse; while here the plaintiff says she had nothing to do with driving the car and had never driven one, and it does not appear that the driver knew that she was looking or listening. The confusion and peril incident to driving an automobile "from the back seat" are proverbial. Not only has the District Court not considered this question, but pertinent evidence on a new trial may not be the same as in the record here.[3]

[10, 11] As the case must be tried again, we may add that upon this record plaintiff cannot be declared, as matter of law, guilty of personal negligence. She cannot be conclusively charged with negligence in not attempting to make the driver stop his automobile within the 8 or 9 feet between the two tracks. Not only had she not seen or heard the train, but she had no authority over the driver, and her interference might of itself have precipitated a collision. We find it unnecessary to consider whether the trial court rightly held the driver negligent. Plaintiff's testimony does not, to say the least, conclusively show him negligent. She testified that the automobile's speed was reduced a quarter of a mile back from the crossing from 16 to 20 miles an hour, until as it neared the crossing, and just before the accident, it had about half that speed. If her testimony were believed, it was open to inference that the bell was not rung; and the inference of the driver's freedom from negligence in the reasonable use of his senses of sight and hearing is coexistent with the presumption of due care on the part of the driver of the engine. Rothe v. Pennsylvania Co. (C. C. A. 6) 195 Fed. 21, 26, 114 C. C. A. 627; New York, etc., R. R. v. Moore (C. C. A. 2) 105 Fed. 725, 727–728, 45 C. C. A. 21. The question of the driver's duty to stop before going on the track may be one of fact, even if sight were cut off, provided hearing was not interfered with.

---

[3] That the rule of imputed negligence (in case of a passenger not strictly for hire) is not thoroughly settled in defendant's favor is manifest. For example: In the pleasure riding cases in the Circuit Court of Appeals for the Third Circuit (Brommer v. Penna R. R. Co., 179 Fed. 580, 103 C. C. A. 135, 29 L. R. A. [N. S.] 924, and Hall v. West Jersey, etc., Co., 244 Fed. 104, 156 C. C. A. 532), the respective plaintiffs, who were sitting on the front seat with the drivers, were declared guilty of personal negligence contributing to the accident, although not on the theory of imputed negligence, but on the ground that they had better opportunity than, and were under equal duty with, the driver to look out for the safety of the party. On the other hand, in Southern Ry. Co. v. Wright (C. C. A. 9) 248 Fed. 261, 160 C. C. A. 339, the deceased, who was riding on and paying for the use of a motor truck (for the purpose of trying it out with a view to its purchase), was by a divided court held a passenger (and so not chargeable with the driver's negligence), although he directed the general route of the truck. In Bramley v. Dilworth, 274 Fed. 267, decided by this court June 7, 1921, it was held, confirming in this respect the holding of the District Court, that the driver's negligence was not imputable to the injured plaintiff, who was riding on the back seat of the automobile and took no part in operating the car in which he was being carried as one of a party of friends, another of whom had possession and charge of and was driving the car. See, also, Toledo, etc., Co. v. Mayers, 93 Ohio St. 304, 112 N. E. 1014; Commissioners v. Bicher, 98 Ohio St. 432, 121 N. E. 535.

L. E. & W. R. R. Co. v. Schneider (C. C. A. 6) 257 Fed. 675, 677, 168 C. C. A. 625. The question of the driver's negligence as an affirmative defense may not arise on a new trial. It will not arise in case his alleged negligence is held not imputable to plaintiff, and, should it arise, the evidence will perhaps be more full and satisfactory than in the present record.

[12] As the trial court did not pass upon, or submit, the question whether the obstruction occasioned by the presence of the freight cars called for the exercise of unusual care on the part of the train crew in crossing the highway, we do not find it necessary to discuss that question. We content ourselves with saying that, if additional care were required of the train crew, the voluntary attempt by one in the road (which may or may not have been seen, or, if seen, not have been understood) to warn the driver of the train's approach, would not, as the evidence now stands, necessarily control the question of the driver's negligence; nor would it, as matter of law, operate to relieve defendant from the consequence of its alleged negligence.

For the error in directing verdict for defendant, the judgment of the District Court is reversed, with instructions to award a new trial.