GOLDMAN v. GOLDBERGER.

(Circuit Court of Appeals, Sixth Circuit.   November 4, 1913.)

No. 2,361.

**1. APPEAL AND ERROR (§ 927*)—REVIEW—JUDGMENT ON DIRECTED VERDICT.**

On review of a judgment on a directed verdict, the appellate court must take that view of the evidence most favorable to the defeated party.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2912, 2917, 3748, 3758, 4024; Dec. Dig. § 927.*]

**2. BILLS AND NOTES (§ 264*)—ACTION BETWEEN INDORSERS—PAROL EVIDENCE OF AGREEMENT.**

Defendant and plaintiff, in the order named, were indorsers on a note given by a corporation in which both were interested. The note was renewed several times, plaintiff being the first indorser on the renewals, the last of which he was compelled to pay in part, and he brought an action to recover the amount from defendant, alleging an agreement by defendant, when the first note was given, to pay it personally. There was evidence tending to support such allegation, and plaintiff testified that when he indorsed the renewal notes he did not know that the order of the indorsements had any legal significance, while it appeared that defendant did know such fact. *Held*, that under the Negotiable Instruments Act of Michigan (Pub. Acts Mich. 1905, No. 265, § 70), which provides, in accordance with the rule of the general law, that while, as between themselves, indorsers are liable prima facie in the order of their indorsements, evidence is admissible to show an agreement otherwise, the evidence was sufficient to require the submission of the case to the jury, as it would have justified a finding that the agreement of defendant to pay the original note impliedly extended to the renewals.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 612; Dec. Dig. § 264.*]

In Error to the District Court of the United States for the Eastern District of Michigan; Alexis C. Angell, Judge.

Action at law by Hyman L. Goldman against Maurice Goldberger. Judgment for defendant, and plaintiff brings error. Reversed.

B. B. Selling and George E. Brand, both of Detroit, Mich., for plaintiff in error.

D. C. Rexford, of Detroit, Mich., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge.   Plaintiff in error and defendant in error were respectively plaintiff and defendant below. The action is for moneys paid by plaintiff by reason of his indorsement of a note given to the Citizens' Savings Bank, of Detroit, Mich., by the Globe Brass Works as principal maker, and indorsed by plaintiff and defendant. Upon the trial verdict was directed for defendant. The facts

are somewhat involved, but the following statement is sufficient for present purposes:

Defendant, who was a creditor of the Globe Brass Company, purchased its assets under statutory receiver's sale for $20,000. For the purpose of making payment of the purchase price, he borrowed from an Indiana bank $5,000, borrowing the remaining $15,000 from the Citizens' Savings Bank. He gave the latter bank his notes for $15,-000, also a bond to pay the bank (which was a creditor of the Brass Company) the difference between the bank's claim and the dividends which should be paid by the receiver, securing the notes and the bond by a chattel mortgage upon all the corporate assets of the Brass Company so purchased, as well as by an assignment to the bank of the dividends receivable by defendant on his claim against the Brass Company. The evidence tended to show that defendant then proposed to sell to plaintiff (who had been an unsuccessful bidder for the Brass Company's assets) one-half of those assets for $10,000, being one-half of the amount bid therefor by defendant, later proposing to let plaintiff have a one-third interest at $6,666.66, and to sell to one Matthews a one-quarter interest and to one Graham a one-twelfth interest at an aggregate price of $6,666.67; that this later proposition was accepted and a new corporation organized, plaintiff advancing the funds and materials for operation, amounting to $3,536.45, for which the new corporation (the Globe Brass Works) gave plaintiff its note; that plaintiff paid the purchase price of his share by giving to defendant the note of the Brass Works mentioned, a note of one Prince for $2,-500, both being indorsed by plaintiff, and his own note for $630.21, all bearing interest. The latter two notes were paid in full. The former was ultimately paid in part by the Brass Works. The subject of plaintiff's liability as indorser upon the Brass Works note so turned out to defendant is not involved in this review.

Graham and Matthews gave defendant their individual notes for the purchase price of their respective shares of the corporate assets. Arrangement was thereafter made by which the bank discharged its chattel mortgage, taking the note of the Brass Works for $12,000 (which included the deficiency on the bank's claim against the Brass Company), indorsed by plaintiff and defendant; the defendant being in form the first indorser and the plaintiff the second indorser, and the Prince note and defendant's claim against the receiver being also pledged as collateral. Defendant then gave the Brass Works a bill of sale of the old Brass Company's assets, with full warranty of title. There was testimony tending to show that, in consideration of plaintiff's indorsement, defendant agreed to personally pay the note given the bank, using for the purpose, so far as necessary, the notes of Graham and Matthews. The note to the bank was not paid at maturity, and thereafter two successive renewals were had, through direct relations between defendant and the Brass Works. Both these renewals were indorsed by plaintiff and defendant, but in the opposite order from the indorsement upon the first note; that is to say, plaintiff appeared in form the first indorser and defendant the second indorser. Plaintiff testified he did not see the renewals after their indorsement.

by defendant, and had no knowledge of the change in the order of indorsement until after the last renewal fell due, and, in fact, did not know that the order of indorsement affected the liability of the indorsers as between themselves. Defendant, however, had such knowledge when the two renewals were indorsed. The bank sued the Brass Works, as maker, as well as both indorsers upon the note, recovered judgment, collected of the Brass Works estate (then in bankruptcy) a portion of the judgment, and from plaintiff the balance above that which the corporate assets yielded.

As already stated, this suit is to recover the net amounts paid by plaintiff upon the judgment, the principal of such payments amounting to upwards of $5,000. The direction of verdict for defendant was upon the grounds that presumptively plaintiff and defendant were liable as indorsers in the order of their indorsement; that this presumption can only be overcome by proof of an agreement between them overthrowing the presumption arising from the order of indorsement; that while there was evidence that defendant agreed, when the original note was indorsed, that he would take care of the note, his obligation was not thereby extended, because he was only agreeing to do what the order of indorsement imported he must do; that there is no evidence that defendant made further agreements with plaintiff regarding their relative responsibility on the note; and thus that the presumption afforded by the order of indorsements on the renewal note was controlling.

[1] Upon the crucial questions of fact involved the parties are in sharp conflict. For instance, defendant denies that he agreed to pay the Brass Works note or to protect plaintiff from loss thereon; denies that there was any consideration for such promise; alleges that the bank transaction was not for his accommodation, but for that of plaintiff and the Brass Works; asserts that (presumably after the first indorsement) he declined to be the first indorser; and that it is his recollection that he indorsed his signature upon one or more of the renewals below that of plaintiff in the latter's presence, at the bank. But it should be unnecessary to say that on review of this direction of verdict we must take that view of the evidence most favorable to the plaintiff. Mason & O. R. Co. v. Yockey (C. C. A. 6th Cir.) 103 Fed. 265, 43 C. C. A. 228; Erie R. R. Co. v. Rooney (C. C. A. 6th Cir.) 186 Fed. 16, 108 C. C. A. 118; Hales v. Mich. Central R. R. Co. (C. C. A. 6th Cir.) 200 Fed. 533, 537, 118 C. C. A. 627.

[2] We think the learned judge who presided below erred in so instructing for defendant. It is true that indorsers are prima facie liable in the order of their indorsements, but the evidence afforded by the order of indorsement is only prima facie. The Michigan Negotiable Instruments Act (P. A. Mich. 1905, No. 265, § 70, p. 400) expressly provides that:

"As respects one another, indorsers are liable prima facie in the order in which they indorse; but evidence is admissible to show that as between or among themselves they have agreed otherwise."

Such is the generally accepted rule in the absence of statute. The burden is, of course, upon plaintiff to show the alleged agreement.

These propositions were recognized by the District Judge. The question arises over their application. There can be no doubt that, had the indorsements appeared upon the original note in the same order as on the renewals, plaintiff's testimony would have been competent evidence of an agreement making defendant in legal effect the first indorser. It is difficult to see why plaintiff is in a worse position from the mere fact that the original order of indorsement accorded with the express agreement of the parties. In our opinion, the view that it is necessary, in order to overcome the prima facie effect of the order of indorsement, that there should be evidence of a new agreement at the time of the subsequent indorsements, or subsequent to the first indorsement, overcoming the prima facie effect of the later order of indorsement, is, under the tendency of the plaintiff's case, erroneous. We think this view gives undue effect to the circumstance that the original agreement was only declaratory of the contract prima facie raised by the order of indorsement, and overlooks the effect of plaintiff's alleged ignorance that the order of indorsement had any legal significance, his denial of the making of any new agreement subsequent to the first indorsement, the fact that the later notes were but renewals of the first, and that in fact he did not know that any change in the order of indorsement had been made. It in practical effect, we think, leaves the plaintiff's situation the same as if the first indorsement had been unaccompanied by the claimed agreement between the parties.

We think the plaintiff's evidence, if believed, would have justified a finding of an implied agreement that the arrangement made when the original note was indorsed should continue with respect to renewals, and that the change in the order of indorsements occurred through a mistake of fact on his part or through the actual fraud of defendant. True, there was evidence that when the original note matured defendant asked the Brass Works to have plaintiff indorse the renewal note, as well as to sign it as treasurer, and to indicate where he desired defendant to indorse; but there is no evidence that plaintiff ever so indicated, as indeed there would seem no occasion for his doing, if ignorant that the order of indorsement had any significance. Nor is there any affirmative evidence that plaintiff was informed of such request. But, even had he been so informed, a failure to so indicate is not necessarily fatal to, or even inconsistent with, his claim that the original agreement still continued.

The judgment of the District Court is reversed, with costs, and a new trial ordered.