CHARLES MALONE AND JOHN MALONE v. SAMUEL G. M. GATES.

*Logs and logging—Scale-sheets—Evidence—Mistake—Practice in circuit court.*

1. Upon proof of the death of a scaler mutually agreed upon by the parties to a logging contract, his scale, if free from fraud or *gross* mistake, is admissible in evidence in a suit upon the contract, and is binding upon both parties.

2. The scale of a deceased scaler mutually agreed upon by the parties to a logging contract is presumed to be correct, fair, and honest, but if evidence is introduced tending to show the contrary, or that there is a *gross* mistake in the scale, the burden is upon the party claiming under it to establish its correctness.

3. The term "gross mistake," as used with reference to a log scale, is a mistake which is clearly shown to have left out some of the logs, or to have increased the scale by a mistake in the tally or in the addition of the amounts on the tally-sheets, or something of that nature, and not an honest error of judgment in the scaler.

4. Where the scale of a deceased scaler is received in evidence, it is competent for witnesses who were present when the scale was made to testify to the manner of its making, and what they did and knew about it, and what the scaler did and said while making it; and the declarations of the scaler against the correctness or honesty of his scale may also be shown.

5. Where logs which were not delivered at the time fixed by the contract, because "hung up" by reason of low water, were received the following year without any demur or protest on account of such delay, but payment was refused because the scale was disputed, such non-delivery is not a substantial breach of the contract.

6. The discretion of the trial judge in the enforcement of Circuit Court Rule No. 63, which provides that "one counsel only on each side shall examine and cross-examine witnesses," is held not to have been abused by allowing one of the attorneys for the plaintiffs to continue and complete the examination in chief

of a witness after it had been commenced by the other attorney.[1]

7. Where, after a scaler mutually agreed upon by the parties to a logging contract had scaled a portion of the logs, his place was by agreement filled by another scaler, who scaled *all* of the logs, evidence of the reputation of the first scaler is immaterial in a suit involving the correctness of the last scale.

Error to Bay. (Cobb, J.) Argued June 20, 1891. Decided July 28, 1891.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*C. L. Collins,* for appellant, contended:

1. Upon the question of the scale, counsel cited *Ortman v. Green,* 26 Mich. 209, 214, 215; *Hopkins v. Sanford,* 41 Id. 252.

2. The non-production of Lapham was not a basis for any legitimate argument on the part of the plaintiffs, particularly in the closing speech; citing *Seligman v. Ten Eyck,* 60 Mich. 269.

*Van Kleeck & McCormick,* for plaintiffs, contended:

1. In the absence of fraud or gross mistake, Smith's scale should govern; citing *Perkins v. Hoyt,* 35 Mich. 506; and his scale-bill, if shown to be correct, would of itself be evidence; citing *Skeels v. Starrett,* 57 Mich. 353.

2. The scale-bill of Smith was the record made by a common agent, and, after showing his agency and death, this record becomes evidence; citing 1 Greenl. Ev. § 154; and Smith's admissions and statements as to the scale, made at the time of the scale, are competent evidence; citing 1 Greenl. Ev. § 113.

3. A joint scale must govern, in the absence of fraud or mistake; citing *Busch v. Kilborne,* 40 Mich. 297.

4. Whether logs were merchantable was to be determined by the scaler agreed upon, and the parties are bound by the logs accepted by him; citing *Leonard v. Davis,* 1 Black, 476.

5. The contract provides for a log-scale, and not for a scale of the lumber at the mill, and this provision is as binding on the parties as other parts of the contract; citing *Hopkins v. Sanford,* 41 Mich. 243.

---

[1] See *Cook v. Insurance Co.,* 86 Mich. 554.

MORSE, J. The parties to this suit entered into the following contract:

"St. CHARLES, MICH., Jan 6, 1887.

"This agreement, made this day by and between Malone Brothers, of Taymouth, Michigan, of the first part, and S. G. M. Gates, of Bay City, Michigan, of the second part, witnesseth:

"That said first parties hereby sell to S. G. M. Gates about five hundred thousand feet of dry and green pine, now on skids on the east half of the south-west quarter of section 14, town 10, range 2 east, and the north-east quarter of section 11, township 10, range 1 east, except as hereinafter named, and deliver the same to said second party where he may direct in Saginaw river, for the sum of eight dollars per thousand feet ($8.00).

"It is agreed by first parties hereto that no dry or dead logs shall be taken by second party which shall measure less than seven inches in diameter at small end inside the sap, and it is further agreed that all timber shall be scaled merchantable for lumber.

"It is agreed that William S. Lapham shall scale the above logs, and his fee shall be paid equally by both parties hereto. The logs shall be delivered to said Gates or his assigns as early in the year as practicable.

"Said second party agrees to pay for the above logs the sum of eight dollars per thousand feet, as follows: $2.50 per thousand when scaled; three dollars per thousand feet when afloat in the river; and the balance, $2.50 per thousand feet, when all of the said logs shall be delivered to said Gates or his assigns.

"Said logs shall be marked by said first parties with a mark to be furnished by said second party at least twice on each end of each log, and as much more as will be plainly seen when the logs are afloat.

"MALONE BROS.

"S. G. M. GATES,

"Per. W. H. BROWN.

"Said Gates agrees to pay, of the $3.00 payment, $2.50 per thousand feet on the bank, and the balance, 50 cents per thousand feet, when afloat in the river.

"S. G. M. GATES,

"Per BROWN."

The plaintiffs brought suit in *assumpsit* in the circuit

court for the county of Bay, counting specially on the contract, alleging that the defendant refused to perform said agreement by not paying them the sum of $506.89 when the logs delivered under it were on the river bank, and $101.13 when the logs were delivered to him in the Saginaw river, according to the terms of the contract; and averring that they had faithfully performed their contract in all things, and sold and delivered to the defendant 202,995 feet of logs under said agreement. The common counts were also added.

Defendant's plea was the general issue.

Plaintiffs had verdict and judgment for $567.70.

The dispute between the parties is mainly as to the scale of the logs,—the number of feet of merchantable lumber actually delivered to the defendant. It was also claimed by defendant that 491 of the logs delivered were dry and dead pine measuring less than 7 inches at the small end, and that there were about 700 logs that practically did not contain any merchantable lumber at all.

The testimony shows that W. S. Lapham, the scaler agreed upon in the contract, went upon the logs, and scaled about 1,200 pieces; but one of the plaintiffs found fault with his scale, and he refused to go on with his scale. By mutual agreement, one George W. Smith was selected in his stead, and went on and scaled the logs. At the time of the trial he was dead, but this fact did not appear in the case until it came out in the cross-examination of the defendant's witnesses. The logs so scaled consisted of 2,359 pieces cut by plaintiffs, and 1,429 pieces bought of one Ira Smith. When the logs were scaled by George W. Smith, he was accompanied by John Malone while scaling the logs cut by plaintiffs, and by Ira Smith while scaling the Smith logs. The logs were all delivered but two. The scale-bill made by

Smith was introduced in evidence, and showed that the logs contained 202,755 feet.

Smith being mutually agreed upon as scaler, his scale, if free from fraud or gross mistake,—a mistake not depending upon the judgment of the scaler,—would be binding upon both parties. When the scale offered was proven to be the scale made by Smith, the presumption would be that it was correct, fair, and honest, and Smith being dead, it would be admissible without any evidence that it was correctly and honestly made. If its honesty or correctness was subsequently attacked, and any testimony introduced tending to show that it was dishonestly or unfairly made, or that there was gross mistake in it, the burden of proof would then be on the plaintiffs to establish its correctness. By gross mistake we mean a mistake which is clearly shown to have left out some of the logs, or increased the scale by a mistake in the tally or in the addition of the amounts on the tally-sheets, or something of that kind, and not an honest error of judgment in the scaler; for it is well understood and established that, in estimating the merchantable lumber in a given log, the judgment of scalers varies more or less, and that the scale cannot be made so accurate that all scalers will agree upon it.

It is contended that the court, in instructing the jury, left out the element of gross mistake; that he charged them that the scale of Smith must prevail if it was found to have been honestly made; that, in so charging, he also omitted another element necessary to a correct scale, to wit, that the scale must be according to the contract. We think the court did not leave out either of these elements. Speaking of the testimony of Brown and Chase, two witnesses of the defendant, who estimated the merchantable lumber delivered by plaintiffs, the court said:

"If you find that there was no fraud or *gross mistake* in the scale made by Smith, then these estimates that were made by Brown and Chase pass for nothing; but those estimates made by them may be taken into consideration for the purpose of ascertaining that fact,— whether George W. Smith's scale is a fair statement about it or not. When that fact is once ascertained, and it is ascertained that the scale is correct, or substantially so, then these estimates pass for nothing. If you should ascertain that this scale is so much out of the way that it cannot be used as a scale, then these estimates may come in to help you ascertain, by means outside of the scale, what the amount of logs delivered actually was."

Again he said:

"And if you find that Smith was mutually agreed upon as the scaler, and that he did scale the logs, and there was no fraud or *mistake,* his determination should govern."

And he also distinctly told the jury that, if he scaled any logs that were not provided for in the contract, his scale would bind nobody; that he had no right to scale any dry logs under 7 inches inside the sap; and that, if he did so, it was the duty of plaintiffs to cull them out, and not deliver them to defendant. The court fairly and fully stated the law governing the scale of these logs, and committed no error in his instructions in this respect.

It was also competent for John Malone and Ira Smith to testify to the manner in which Smith's scale was made, what they did and knew about it, and what Smith said and did while he was scaling the logs; but the court erred in not permitting testimony to be given on behalf of defendant as to what Smith had said as to the manner in which he made the scale. If Smith had been alive, he would have been subject to cross-examination as to the way he made his scale. Being dead, his scale was admissible without his testimony; but we think, in such

case, that his declarations against the correctness or honesty of his scale would be admissible.

It is alleged as error that John Malone was permitted to testify that the scale made by Smith was one agreed upon by Smith and himself. If any error was committed in the admission of this testimony, it was cured by the circuit judge in his charge. He instructed the jury that it was not competent for Malone and Smith to agree upon a scale that would bind defendant; that Smith's business was to measure and scale the logs, and not to agree upon anything, but to ascertain the correct scale by the application of his rule and judgment to the logs.

The court was requested by the defendant to instruct the jury that the failure of the plaintiffs to deliver all the logs in 1887 was a substantial breach of the contract. This was refused. The testimony showed that a portion of the logs were "hung up" that season, and not delivered until 1888, and that defendant received them at that time without any demur or protest that they were not delivered in time under the contract. The reason that defendant refused to pay plaintiffs for the whole number of logs delivered, upon Smith's scale, was because he disputed the scale, and not because a portion of them were not delivered until 1888. There was no error in refusing this request, or a similar one,—that, if plaintiffs had not excused the non-delivery of the logs in 1887, there was a substantial breach of the contract.

It is alleged as error that after Mr. McCormick, one of the attorneys for plaintiffs, had commenced the examination of a witness, and conducted it to a certain point, the court permitted Mr. Van Kleeck, another attorney for plaintiffs, to continue and complete the examination of the witness, in violation of Circuit Court Rule No. 63. We think the judge has some discretion in the enforce-

ment of this rule, and that he did not abuse his discretion in this case.

The defendant undertook to show the reputation of Mr. Lapham as a scaler, but was not permitted to do so. This ruling of the circuit judge was correct. The parties, after the contract was made, selected another man; and, as was well said by the circuit judge in his charge, the reasons why the change was made were not material to the issue in this case. Lapham's scale was not in controversy, and his reputation not in question.

In this connection, it may be said that Mr. Van Kleeck, attorney for plaintiffs, traveled out of the legitimate issues in the case when he commented upon the fact that Mr. Lapham had not been produced as a witness, if, in such comments, he argued that the failure so to produce him had any bearing against the defense; but it does not appear from the record what Van Kleeck said, except that "he commented to the jury upon the fact that the defendant had not produced Mr. Lapham as a witness." There was no reason why Mr. Lapham should have been called as a witness by one party more than the other, or that he should have been called at all, as a matter of strict right or necessity.

We have noticed all the errors assigned that seem to us to demand discussion.

For the error in not admitting the declarations of Smith in relation to his scale, offered to be shown by the defendant by two witnesses, the judgment of the lower court is reversed, and a new trial granted, with costs of this Court to defendant.

The other Justices concurred.