## MARTIN BRESNAHAN v. WILLIAM M. ROSS.

*Logs and logging—Conclusiveness of scale—Question for jury—
Damages.*

1. The rule laid down in *Savercool v. Farwell*, 17 Mich. 308, *Ortman v. Green*, 26 Id. 209, and *Malone v. Gates*, 87 Id. 332, is that when a scaler, agreed upon by both parties to a logging contract to scale the logs cut under the contract, has exercised his judgment in making the scale, and no fraud or mistake in figures is shown, the scale must stand.

2. A contract for the sale of logs provided that no rough, knotty, wormy, or top logs were to be taken; that all logs were to be cut from good, sound, green, body timber; and that the scaler, who was agreed upon in the contract, should scale the logs merchantable. The logs, at the time they were attempted to be scaled, lay only one tier deep on the skidways, were covered with snow from two to two and one-half feet deep, which

was not removed, and the ends were covered with ice. The vendor sued to recover a balance claimed to be due on the contract. No claim was made by the defendant that the scaler was dishonest, or that he in any way attempted to make an unfair scale in the interest of either party; but it was claimed that he made no scale at all, and could make none, under the conditions stated. And it is held that it should have been left for the jury to determine whether the scale was such as the one provided for in the contract; that, if they found that it was not, then they should resort to other means and other measurements to determine the amount of the logs.

3. The vendee accepted some logs which were below the standard fixed in the contract. And it is held that the jury should have determined their reasonable market value, which would be the measure of plaintiff's recovery for said logs.

Error to Bay. (Maxwell, J.) Argued November 2, 1894. Decided January 4, 1895.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*J. L. Stoddard,* for appellant.

*Simonson, Gillett & Courtright (H. H. Woodruff,* of counsel), for plaintiff.

Long, J. This action was brought to recover a balance claimed to be due upon a certain contract dated November 24, 1893. By the contract the plaintiff agreed to sell to the defendant all the oak saw logs he might lumber off of certain lands therein described, "for the sum of $10 per M. for same loaded on cars at Roscommon in good shape. All logs to be cut 12, 14, and 16 feet long, and as much as possible 14 feet long, and to be 12 inches and up at the small end. No rough, knotty, wormy, or top logs to be taken. All logs to be cut from good, sound, green, body timber, and not to take more than 10 logs to the thousand. The above logs to be lumbered and loaded on

cars on or before April 30, 1894. Logs to be scaled merchantable by Josiah Hoover when there is 100 M. or more on skids." The contract then provides for the time and manner of payment; and it is conceded that defendant has made payments upon the contract aggregating $1,125. The evidence shows that the plaintiff let the job of lumbering to one Charles Blanchard, and that very shortly after the contract was made the work of lumbering was begun. After the logs were cut and skidded, Mr. Hoover, the scaler mentioned in the contract, went to Roscommon and made a scale. About the middle of March following, the plaintiff began shipping the logs to Bay City. On the arrival of the first train load, the defendant wired plaintiff:

" Come down. Logs will have to be rescaled. About half dead and wormy timber. Cars not half loaded. Load heavier."

Plaintiff did not respond to this message, but kept on shipping the logs, and on the next day defendant wired him again:

" Why don't you come down? I cannot accept the dead and wormy logs."

After all the logs were shipped, the plaintiff wired defendant, on March 22:

" Will be in Bay City at 1 o'clock to-morrow."

Before plaintiff reached Bay City all the logs had been unloaded, and the defendant had commenced sawing. Defendant says he commenced on the day plaintiff arrived; plaintiff says, two days before. Defendant then gave plaintiff to understand that he would not accept the woods scale made by Hoover, but no agreement was arrived at. Defendant had Hoover make another scale, and the railroad company had also made a scale. No money was paid on the contract after the logs were received at Bay City.

Before going north to make the scale, Hoover was notified that he would find some non-contract logs there, of which he was to make a separate scale. He made the scale with this in mind. On the trial the defendant contended that he was not bound by the scale made by Hoover. Hoover was called as a witness by plaintiff, and gave testimony which defendant contends shows that he did not use his judgment in getting at the correct amount, for the reason that the logs were so covered with snow and ice that he could not see them to estimate the quantity and quality of the timber. But it appears that in making the scale he separated the logs, and scaled the non-contract ones as well as the others. There is no doubt about the logs scaled at Roscommon being the same logs which Hoover afterwards scaled at Bay City, but there is a great difference in the two scales. Hoover attempts to account for it by saying he could not see the logs by reason of the snow and ice upon them. He measured one end of the logs, and Mr. Cox, who was also sworn as a witness in the case, measured the other end, and he gave, as he says, the correct measurement to Hoover, who got the contents. Mr. Hoover testified further as follows:

" *Q.* Is the difference in the number of feet in the two scales a difference in the judgment, one place and the other?

"*A.* No; I couldn't see the logs in the woods.

" *Q.* Is it, or is it not, a fact that the difference in your scale is a difference simply in judgment of one place and the other?

"*A.* No; I told you I didn't see the logs in the woods. They were buried in the snow, and here they laid out so I could see the culls. Lots of the logs there ain't a board in.

" *Q.* Is the difference in the quantity of the logs in one place and the other a difference in your judgment in the two places?

"*A.* Certainly there is a difference in judgment.

" *Q.* How otherwise can you explain the difference in the number of feet that you found in the logs here and the number of logs in the woods, except your difference in judgment?

"*A.* In seeing the logs here, and in the woods I did not see them. I had no chance there to scale them.

" *Q.* That is not an answer to the question.

"*A.* I cannot answer it any other way. I saw the logs here, and there I did not. I scaled out all the defects I saw in the woods.

" *Q.* Does that account for the difference in judgment?

"*A.* Yes; what I didn't see in the woods.

" *Q.* Then it is not a difference in figures?

"*A.* No.

" *Q.* You think there was a mistake in your scale in the woods. Was that a mistake in computation or a mistake in judgment?

"*A.* Well, I don't know. The mistake was made on account of the snow. I couldn't see the logs. I supposed I scaled them all at that time. It was a mistake in the logs. I couldn't see the logs. *     *     *     *     *

" *Q.* Then how do you account for your difference in the scale at Bay City and Roscommon in any other way, except by a difference in judgment on the logs?

"*A.* I told you I couldn't see the logs in Roscommon, and here I saw them. *     *     *     *     *     *

" *Q.* What, if anything, prevented you from correctly estimating the amount of the logs except the snow on them?

"*A.* That is all; I could not see the logs."

Upon recross-examination he testified:

" It was not possible, in the condition in which I found those logs in the woods, for me, or any one else, to make a reasonably correct scale. When I started from Bay City to go up there to make the scale, I didn't think there was over 6 inches of snow. I spoke to the young man John C. Ross, and he said there was no snow. If I had known about it, I would not have undertaken to scale them at all; but after getting up there I thought I would go ahead, and do the best I could, as it was quite an expense to get me in there. It is not a matter of judgment to tell a dead log from a green one. Anybody, whether he is a scaler or not, can tell that, if he can see the logs. *     *     * It is not a matter of judgment to tell a log that is 12 inches and upwards from a log that is less than 12 inches; that

is simply a matter of measurement. The judgment of the scaler is only brought into play when he puts his rule upon a log that is defective in some way, and he makes, in his own mind, a certain deduction for the defect. That is the only way where the judgment comes in play; so that, as to determining whether logs are dead or green logs, it don't require the judgment of the scaler; and in determining whether logs are 12 inches and upwards, or less than 12 inches, that is not a matter of judgment."

The following shows the two scales, according to Hoover's testimony:

| HOOVER'S WOODS SCALE. | | | HOOVER'S BAY CITY SCALE. | | |
|---|---|---|---|---|---|
| | No. Logs. | No. Ft. | | No. Logs. | No. Ft. |
| Green oak | 1,853 | 215,000 | Green oak | 1,063 | 100,710 |
| Dry | 67 | 7,600 | Dry and wormy | 735 | 56,920 |
| 10 and 11 in. | 200 | 7,250 | Under 12 in. | 231 | 7,290 |
| | | | Culls | 71 | |
| Total | 2,120 | 229,850 | Total | 2,100 | 164,920 |

The court was requested by defendant to charge the jury:

"1. Under the contract between the plaintiff and the defendant dated November 24, 1893, the plaintiff agreed to sell and deliver to the defendant, on cars at Roscommon, in good shape, the oak saw logs to be cut off of the land therein described, 'all logs to be cut 12, 14, and 16 feet long, and as much as possible 14 feet long, and to be 12 inches and up at the small end; no rough, knotty, wormy, or top logs to be taken; all logs to be cut from good, sound, green, body timber, and not to take more than 10 logs to the thousand;' and the plaintiff had no right to ship to the defendant logs cut from dead or wormy timber, nor to ship him logs that were less than 12 inches in diameter at the small end; and Mr. Hoover, the scaler mentioned in the contract, had no right to scale any wormy logs, or any logs that were not cut from good, sound, green, body timber; and if he did scale any such logs, that did not give the plaintiff the right to ship them to the defendant; and if the plaintiff shipped to the defendant wormy logs, or logs that were not cut from good, sound, green, body timber, mingling such logs with the logs that the defendant was entitled to under the contract, and if it was impracticable for the defendant to sort out and reject such

wormy and dead logs, the defendant cannot be required to pay the contract price therefor, but he is only bound to pay what such defective logs were fairly worth.

"2. It was the duty of Mr. Hoover to scale the kind of logs mentioned in the contract, and for that purpose he was agent for both parties; but, if he went to scaling other logs not provided for in the contract, he was not the agent of either party in doing that, and any scale made by him of such non-contract logs would not bind either of the parties; and if you find that Mr. Hoover, when he scaled the logs in the woods, scaled, and included in his scale bill rendered to the parties to the contract, a large number of wormy logs, and of logs that were not cut from good, sound, green, body timber, and if such non-contract logs cannot be separated in his scale from the other logs scaled by him, then such scale is not binding upon the defendant, and you must determine, from all the evidence in this case, how many feet of contract logs there were delivered to the defendant."

"4. The defendant is liable for the amount of contract logs, at contract price of $10 per thousand feet, and for the dead and wormy logs at what they are fairly worth; and in determining the amount to which the plaintiff may be entitled for the wormy logs, and logs that were not cut from good, sound, green, body timber, you should take into consideration any excessive amount of freight which the defendant may have been required to pay upon the logs by reason of dead and wormy logs being mingled with contract logs, and shipped to him by the plaintiff upon the same cars to Bay City.

"5. It appearing, from the undisputed testimony, that the scale of the logs made in the woods was not made entirely by Hoover, but that he scaled at one end of the logs and the young man Cox the other, and it also appearing that Cox had never, except upon one occasion, some three or four years prior, done any scaling or assisted in making any scale, the woods scale so made is not binding upon the defendant."

These requests were refused, and the court directed the jury as follows:

"Now, under the circumstances, I feel compelled to charge you that this scale made by Mr. Hoover in the woods is, to the extent of the contract logs, binding and final; that what he determined then was the final deter-

mination; and that no subsequent dissatisfaction of Mr. Ross would make any difference. There is no fraud charged; there is no great mistake, except in the judgment or exercise of judgment. Now, an umpire like that can only exercise his judgment once, and when he has exercised it honestly, and according to his judgment at the time, that is the end of that. Therefore you will find a verdict for the plaintiff for the sum of $1,037.50. In addition to that, the plaintiff claims that he furnished 67 dry logs."

The jury were directed that plaintiff could recover only what these logs were worth, and that he had a right to such value, as they had been received by defendant and sawed. At the conclusion of the above portion of the charge the court stated:

" The attorney for the defendant submits to me the following requests, all of which I refuse, except the third. The third is as follows:

" ' If you find that the scale of logs made in the woods by Mr. Hoover varies materially from what a reasonably true and correct scale of the logs under the contract would have been, and if that variation was caused by fraud on the part of Mr. Hoover, or of the person who assisted him in making the scale, or by gross mistake upon the part of Mr. Hoover or his assistant, then such scale is not binding upon Mr. Ross, and you will have to determine what the quantity of contract logs actually delivered was, from all the evidence bearing upon that subject which has been given on the trial.'

" I give you that request.
" *Mr. Stoddard:* Now, if your honor please, that being different from what your honor intimated before the charge was commenced, I would like to argue that question to the jury.
" *The Court:* I have stated to the jury that I did not see any evidence of fraud or any evidence of mistake. Of course, they have heard the testimony the same as I have, but still I think, in the abstract, the request is very proper; but I don't think it applies to the case. (Defendant's counsel excepted.)
" *Mr. Stoddard:* I ask to argue that question to the jury under that request.
" *The Court:* I don't think you can have any argument now, at this late stage of the case."

The jury returned a verdict for plaintiff of $1,128.24.

We may say here that counsel for defendant, before the charge was given, had announced that the only question he desired to address the jury upon was whether the logs shipped were the same logs scaled in the woods. We think there can be no question, under the evidence, of that fact. But it appears that before the court commenced the charge to the jury he had substantially stated to counsel that he would hold the woods scale binding and conclusive upon the parties, and he did so charge. If, therefore, he was in error in this, we think he was also in error in not permitting counsel to argue the third request to the jury. The main question in the case, however, is whether the court was correct in directing the jury as he at first did direct them,—that the woods scale was conclusive.

It is contended by counsel for defendant that the case is governed by *Malone v. Gates*, 87 Mich. 332. In that case, however, the question was one of measurement. The contract provided:

"No dry or dead logs shall be taken by second party which shall measure less than 7 inches in diameter at small end, inside the sap; and it is further agreed that all timber shall be scaled merchantable for lumber."

On the trial of that case the court directed the jury, substantially, that the scaler had no right to scale any dry logs under 7 inches in diameter inside the sap, and, if he did so, it was the duty of plaintiffs to throw them out, as the defendant would be under no obligation to pay for them, the contract not applying to them; that the scaler was sent there to scale the kind of logs mentioned in the contract, and for that purpose he was the agent of both parties, and his scale, if honestly made, would bind the parties; but if he went to scaling something else, that was not provided for in the contract, he was not the agent for either party for doing that, and no scale that he might

make of those logs would bind anybody. This charge was approved by this Court; but it will readily be seen that it had reference to dry logs under 7 inches. It did not require the exercise of judgment to determine this question. It could be ascertained by the mere measurement. In the present case, however, Hoover was sent to make the scale for the very purpose of determining what were contract logs, and it required the exercise of judgment to determine that question, as, under the contract, no rough, knotty, wormy, or top logs were to be taken, and all logs were to be cut from good, sound, green, body timber. It was for Hoover to determine whether a log was rough, knotty, or wormy, and whether it was sound, green, body timber. It was not a matter of measurement, but an exercise of judgment, in determining whether each log came within the terms of the agreement. There were no other means agreed upon to determine these questions than Hoover's judgment; and, as was said in *Malone v. Gates, supra:* "His scale, if free from fraud or gross mistake,—a mistake not depending upon the judgment of the scaler,—would be binding upon both parties." It was said further, in that case, and the language may well be applied to the present one:

"If its honesty or correctness was subsequently attacked, and any testimony introduced tending to show that it was dishonestly or unfairly made, or that there was gross mistake in it, the burden of proof would then be on the plaintiffs to establish its correctness. By gross mistake we mean a mistake which is clearly shown to have left out some of the logs, or increased the scale by a mistake in the tally or in the addition of the amounts on the tally-sheets, or something of that kind, and not an honest error of judgment in the scaler; for it is well understood and established that, in estimating the merchantable lumber in a given log, the judgment of scalers varies more or less, and that the scale cannot be made so accurate that all scalers will agree upon it."

In *Savercool v. Farwell,* 17 Mich. 308, 321, it was said:

"It was insisted by the defendant below that the contracts did not make the inspection of the lumber conclusive upon the parties, and he offered evidence tending to show that some of the lumber rejected by the inspector was such as came within the description specified in the contracts. We think the court was right in excluding the evidence. If the inspection was not to be conclusive, we are at loss to perceive how it could have any intelligible effect under the contract."

In *Ortman v. Green,* 26 Mich. 209, 215, it was said:

"The scaling involves two processes,—one of measurement and computation by figures, and one of judgment, depending on knowledge and experience. * * * If Ortman, with adequate knowledge of Wade's competency as a scaler of logs, deliberately agreed to be satisfied with his scale made on the bank, or if Wade was in fact an honest and competent scaler, no complaint could be made of any mere error of judgment not indicating that there had been any blunder in figures or measurement."

It is true that in the present case no claim is made by the defendant that Hoover was a dishonest scaler, or that he in any way attempted to make an unfair scale in the interests of either party; but it is claimed that he made no scale at all, and could make none, under the conditions existing. The logs lay only one deep on the skidways, and were covered with snow from two to two and one-half feet deep. The ends were covered with ice. The snow was not removed. The contract contemplated that the logs should be scaled by Hoover when they were in such condition that a fair scale could be made, and he could exercise honest and fair judgment. The contract was that they were to be scaled merchantable. If his testimony was true, this could not be done. It appears that the scale made by the railroad company as the basis for its charge for freight was 55,000 feet less than the scale made by Hoover in the woods. The case differs materially in these respects from the cases above cited. The rule laid down in those cases is that when there has been an exercise of

judgment, and no fraud is shown and no mistake of figures, the scale must stand; but here there was no exercise of judgment, if the testimony of Hoover be true. We think the question was one that should have been left to the jury to determine, whether the scale in the woods was such as the one provided for in the contract; and, if they found that it was not, then they should resort to other means and other measurements to determine the amount. The court was therefore in error in stating to the jury that the woods scale must govern. The defendant's first and second requests to charge should have been given. As to the non-contract logs, the jury should determine their reasonable market value.

The judgment must be reversed, and a new trial ordered.

The other Justices concurred.