HERMAN H. HETTLER LUMBER CO. v. OLDS.

(Circuit Court of Appeals, Sixth Circuit. April 16, 1915.)

No. 2514.

**1. TRIAL ⊜⇒178—DIRECTION OF VERDICT—CONFLICTING EVIDENCE.**

On a motion for a directed verdict, the testimony against the moving party must be construed in the light most favorable to the other party, and if such proof, so construed, fairly raises a controversy of fact, and, if believed by the jury, is sufficient to support a verdict against the moving party, the determination of such controversy of fact is for the jury, no matter how greatly the court may judge the testimony to preponderate in favor of the moving party.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 401–403; Dec. Dig. ⊜⇒178.]

**2. SALES ⊜⇒168—INSPECTION BY THIRD PARTY—CONCLUSIVENESS.**

In Michigan, where lumber is sold to be inspected and graded by an inspector agreed upon by the parties, his inspection is impeachable only for fraud or mistake so gross as to be in effect equivalent to fraud, and an honest error of judgment in the chosen inspector will not overthrow his conclusion, though as an effect thereof there is a measurable difference of results from those obtained by other equally reliable inspectors.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 403–408; Dec. Dig. ⊜⇒168.]

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3.** SALES ⚖➔168—INSPECTION BY THIRD PARTY—CONCLUSIVENESS.

Where delivery of lumber after an inspection and grading by an inspector agreed upon by the parties to a sale thereof was to be made in Michigan, the law of Michigan as to the conclusiveness of such inspection and grading must be applied.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 403–408; Dec. Dig. ⚖➔168.]

**4.** SALES ⚖➔181—ACTIONS FOR PRICE—EVIDENCE—IMPEACHING INSPECTION.

Though, under the rule in Michigan, an inspection and grading of lumber by an inspector agreed upon by the parties to a sale thereof cannot be impeached for a mere error of judgment, however substantial, evidence of material differences in results between such inspection and the inspection and grading of other impartial inspectors is competent to show a gross mistake in the agreed inspection.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 473–491; Dec. Dig. ⚖➔181.]

**5.** SALES ⚖➔181—ACTIONS FOR PRICE—QUESTIONS FOR JURY.

In an action for the price of lumber, 78 per cent. of which was merchantable according to the inspection and grading thereof, by inspectors agreed upon by the parties, where there was evidence that such inspection was made very rapidly, and in weather so extremely cold that the tally men worked with benumbed fingers, and that inspections by other inspectors showed as low as 43 per cent. of merchantable lumber, and though the inspection showing the smallest amount of merchantable lumber was made by a different standard of grading than that of the original inspection, it was not shown how far the difference in the two standards accounted for the difference in results, the question whether there was a gross mistake in the agreed inspection should have been submitted to the jury.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 473–491; Dec. Dig. ⚖➔181.]

**6.** SALES ⚖➔182, 355—ACTIONS FOR PURCHASE PRICE—EVIDENCE ADMISSIBLE UNDER GENERAL ISSUE.

In an action for the purchase price of lumber inspected and graded by inspectors agreed upon by the parties, evidence to show a gross mistake in such inspection was admissible under the general issue, as plaintiff was bound to show that such inspection was free from fraud or gross mistake, and while it may be that this would be presumed, the fact was one essential to plaintiff's case in chief, and anything which fairly attacked it was competent to be shown in defense under a general denial.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 492–495, 1025–1043; Dec. Dig. ⚖➔182, 355.]

In Error to the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Action by Millard D. Olds against the Herman H. Hettler Lumber Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

C. E. Cleveland, of Chicago, Ill., for plaintiff in error.

W. S. Humphrey, of Saginaw, Mich., for defendant in error.

Before WARRINGTON and DENISON, Circuit Judges, and KILLITS, District Judge.

KILLITS, District Judge. The action in this case arose from a sale of lumber by the defendant in error, Olds, whom we shall designate as the plaintiff, to the plaintiff in error, the Herman H. Hettler

Lumber Company, a corporation, who will be referred to as the defendant. The sale and delivery of the lumber were had at Cheboygan, Mich., after an inspection by a firm of lumber inspectors, W. L. Martin & Co., suggested for that office by the defendant and accepted by the plaintiff. The controversy arises over the conclusiveness of the inspection. As returned by the inspector, the lumber tallied, 454,334 feet, or 78 per cent., merchantable, and 128,264 feet mill culls; the two classifications into which, by the contract of sale, it was to be graded. The difference in price between the two grades, merchantable being the more valuable, was $5.50 per thousand feet, and the total sale value of the shipments, accepting the inspection, was $8,324.82, for which amount, with interest, plaintiff sued.

The lumber was resold by defendant before shipment to the John Spry Lumber Company, of Chicago, to which place it was shipped. On its arrival the purchaser protested the grading. At Chicago various estimates were made, based on partial or superficial inspections; the actors accepting 10,000 to 30,000 feet as indicating the character of the entire shipment and averaging from such data. One of these inspections was made by a member of the inspecting firm of Martin & Co., of Cheboygan. This man, who examined not to exceed 10,000, feet, gave the defendant a written opinion that there had been an improper grading. His specific testimony was that the culls ran between 30 and 35 per cent. The others, each connected with either defendant or consignee, testified to estimates that from 42 to 60 per cent. of the amount was not merchantable. Finally, an independent inspection firm of Chicago was employed to go over the entire lot. After considering and tallying every piece, it reported less than 43 per cent. merchantable. At this time the lot tallied over 16,000 feet short of the amount found at Cheboygan.

At the trial a verdict was directed for the plaintiff for the full amount of its claim; the court saying to the jury, in explaining the direction:

"Now, that inspection, under the law, is binding on both the parties, both as to the quantity and as to the kind, unless there was gross mistake in connection with that inspection. Now, there isn't any claim in this case that there was any fraud. If either one of the parties conspired with the inspector to make a false inspection, if anything of that kind had occurred, that would vitiate and make void the inspection, so that it would not be binding upon the parties. But nothing of that kind is claimed here. There is no proof in this case from which the court would permit the jury to find there was a mistake in that inspection made at Cheboygan, no such gross mistake as the law contemplates. If, in a case like this, there is no testimony such that the court would feel its duty to set aside the verdict unless it was found in a certain way, then it becomes the duty of the court to so state to the jury, and not send the jury out to find the fact, when, if the jury found it in one way, and not the other, the court would feel bound to set aside the verdict after it had been found. So I say here, there is no proof in this case from which the court could permit you to find that there had been that kind of a gross mistake made in that inspection which would set aside the inspection made by W. L. Martin & Co. at Cheboygan."

The evidence justified the court in excluding the question of fraud in the inspection, which was, in fact, had in part under the eye of that representative of defendant who made the contract, and who approved

the standard of selection between merchantable and mill cull lumber employed by the inspector then actively at work. The evidence is altogether to the effect that the inspection was honest and by impartial men; but it was performed with extraordinary rapidity and in weather so cold that the tally men, who kept record by perpendicular tally marks in appropriate columns of blanks for the purpose, worked with benumbed fingers, and they were obliged because of the extreme cold to be relieved from time to time by those engaged in turning over the boards for the inspector. The shipment under criticism was the last of four ship loads, all purchased under the same contract. The three earlier were also inspected by Martin & Co., and no fault was found in any instance with either quantity or grading as the lumber arrived at destination.

[1] Addressing ourselves to the reasons advanced by the court for directing a verdict, we are constrained to find the trial court in error in holding a duty to direct a verdict when, in the court's judgment, the evidence so greatly preponderates that a verdict against the court's view of its weight would necessitate the granting of a motion for a new trial, if we may so interpret the language above quoted. On a motion for a directed verdict, the testimony against the movant must be construed in the light most favorable to the other party. If, where there is testimony on both sides, the proof against the movant, so considered, fairly raises a controversy of fact with that in his behalf, and, if believed by the jury, is sufficient to support a verdict against him, the resolution of that controversy of fact is for the jury, under proper instructions, no matter how greatly the court may judge the conflict in testimony to preponderate in favor of the movant. Not to go beyond this court, the law is settled for this circuit by repeated adjudications. Mt. Adams, etc., Ry. v. Lowry, 74 Fed. 463, 20 C. C. A. 596; Mason & O. R. Co. v. Yockey, 103 Fed. 265, 43 C. C. A. 228; Rochford v. Pennsylvania Co., 174 Fed. 81, 98 C. C. A. 105; Big Brushy Coal Co. v. Williams, 176 Fed. 529, 99 C. C. A. 102; Nelson v. Ohio Cultivator Co., 188 Fed. 620, 629, 112 C. C. A. 394; McIntyre v. Modern Woodmen of America, 200 Fed. 1, 121 C. C. A. 1.

In applying the rule of these decisions, we have in mind the presumption that arises in support of the result reached by the grade scalers or inspectors—Martin & Co.—as indicated by their certificate as to grades and qualities of the lumber in dispute (Malone v. Gates, 87 Mich. 332, 336, 49 N. W. 638), and the consequent character and tendency of the evidence required to oppose this presumption. For example, where the presumption is met by evidence under the defense of gross mistake in grading or measuring the lumber, or in both, such evidence, upon plaintiff's motion to direct, must be viewed, most favorably for the defendant; and if, when so considered, it would support a verdict for the defendant, or if the evidence should give rise to opposed inferences in this behalf, the motion should be denied.

[2-4] The trial court, in the excerpt from its charge quoted above, correctly stated the law affecting the degree of conclusiveness to be given to the inspection at Cheboygan. The contract undoubtedly involved an inspection according to standards obtaining at the place of

inspection and having effect according to the settled law of Michigan, which, as we read the authorities, in circumstances where, as here, the inspector is agreed upon, is that the inspection is impeachable only by clear proof of either fraud or of mistake so gross as to be in effect equivalent to a fraud, and that proof of only an honest error of judgment in the chosen inspector, even if there were as an effect a measurable difference of results from those obtained by other equally reliable inspectors, cannot be made available to overthrow the original conclusion. Ortman v. Green, 26 Mich. 209; Malone v. Gates, 87 Mich. 332, 49 N. W. 638; Bresnahan v. Ross, 103 Mich. 483, 61 N. W. 793; Eakright v. Torrent, 105 Mich. 298, 63 N. W. 293; Sullivan v. Ross, 124 Mich. 287, 82 N. W. 1071; Robinson v. Ward, 141 Mich. 1, 104 N. W. 373. As the delivery after inspection was to be at Cheboygan, the rule of these cases must be applied. Coghlan v. South Carolina R. Co., 142 U. S. 101, 109, 12 Sup. Ct. 150, 35 L. Ed. 951; Liverpool, etc., Steam Co. v. Insurance Co., 129 U. S. 458, 9 Sup. Ct. 469, 32 L. Ed. 788. But we are unable to see in the doctrine sustaining the conclusiveness of an agreed inspection, when mere error of judgment, however substantial, is urged for impeachment, any inhibition against resorting to material differences in results depending upon judgment and between impartial inspectors as competent testimony in an attempt to prove gross mistake in the agreed inspection. By itself such a difference might not be sufficient, but, related to other testimony, it is a competent item of proof.

[5] It is urged that the inspection by Webber, at Chicago, ought not to be considered, because the basis of grading was not that in vogue in Cheboygan, and therefore part of the contract. There is some reason to urge that the grading criteria differed in the two locations. The record does not demonstrate whether or not the Chicago inspector put among the culls all boards which were not "plump 2 inches" thick. In Cheboygan the rule was to grade as 2-inch stuff anything 1⅞ inches or over in thickness. Because, therefore, we are unable to ascertain how far the difference between the Cheboygan and Chicago standards in this respect accounts for the difference in results, it is impossible to say that the Chicago inspection should be rejected on account of this difference in grading criteria. If a jury should say, passing upon disputed testimony, that the difference extended to all the material and to all the Chicago inspections, the result would be to establish, of course, the conclusiveness of that at Cheboygan. The record as it is, we think, shows divergencies between the Martin inspection in Michigan and those at Chicago, but especially that of Lasley (by Webber), so great as to challenge inquiry for mistake somewhere. They involve more than 30 per cent. of the entire shipment. Martin's employés find 454,334 feet merchantable, whereas Lasley (Webber) records but 248,969 feet of that grade.

This situation invites attention to conditions of inspection at the two places as shown in testimony. That at Cheboygan was accomplished in an unusually short time and under weather conditions which, in connection with the rapidity demanded of the tally men and considering the method of keeping tally, may have been conducive to error.

Having regard to the haste employed, errors in understanding calls are conceivable, as well as those possible from rapid recording. By Webber, the inspection was deliberate, and each piece was examined on all sides. We must not be understood as suggesting that the inspection at Chicago was more reliable than that at Cheboygan, or that a verdict for defendant rendered by the jury should have stood, as the testimony now is. This court has no function now to determine either of these matters, but we are of the opinion that the whole testimony was of such character that the case should have been submitted to the jury under proper instructions.

Our attention has been called to the recent case of Frisco Lumber Co. v. Hodge (C. C. A. 8th Circuit) 218 Fed. 778, 134 C. C. A. 456. So far as this decision is relevant at all, it is in line with the tenor of the Michigan cases cited above, and we perceive no essential difference in rule between them and it and the cases from federal authority which it cites. Were the case of Frisco Lumber Co. v. Hodge at all inconsistent with the position we take as to the conclusiveness of the Cheboygan grading, it might be considered that the formal arbitration with a consequent award present in it was controlling to distinguish the two situations.

[6] We think untenable the point that defendant's testimony to impeach the inspection was incompetent for want of a notice under the plea of a general issue. In Third National Bank of New York v. Steel, 129 Mich. 434, 88 N. W. 1050, 64 L. R. A. 119, the court said:

"We think the better rule is that a general denial puts the plaintiff to his proof of a contract complying with the law, or of a transaction which would render the defendant liable."

Here plaintiff, against the general denial, was not only obliged to show an inspection result from agreed sources, but carried the burden of showing that such inspection was free from fraud or gross mistake. It may be that such a character borne by the inspection would be presumed, but the fact was one essential to plaintiff's case in chief. Anything which fairly attacked it was competent to be shown in defense under a general denial. See Wilson v. Wagar, 26 Mich. 452; Grieb v. Cole, 60 Mich. 397, 27 N. W. 579, 1 Am. St. Rep. 533; Sprague v. Hosie, 155 Mich. 30, 118 N. W. 497, 19 L. R. A. (N. S.) 874, 130 Am. St. Rep. 558. The distinction between the case before us, in this particular, and that recently decided by the Supreme Court of Michigan (Turnbull et al. v. Michigan Central Railroad Co., 150 N. W. 132, decided December 18, 1914), is so obvious as to render the latter inapplicable. In the latter case, the capacity of the plaintiffs to sue was sought to be attacked under the general issue. They sued as a partnership under a fictitious name, without obeying an act of Michigan requiring such partnerships to do certain things as prerequisites to beginning actions. It was held that a failure to comply with the statute was an affirmative matter, which should have been the subject of a notice with the plea. The line is clear between a defense which attacks capacity to sue at all and one which merely combats the affirmation of facts necessary to constitute a cause of action.

The judgment must be reversed, and cause remanded for a new trial.