UNITED STATES v. DE BOLT et al.

(District Court, S. D. Ohio, E. D.   July 3, 1918.)

No. 1105.

1. CRIMINAL LAW ⊘⇒753(1)—DIRECTION OF VERDICT—CONSIDERATION OF EVI-
    DENCE.
        It is the duty of the court, in considering a motion to direct a verdict,
    to take that view of the evidence most favorable to the party against
    whom it is desired that the verdict should be directed, and determine the
    matter from that evidence and reasonable and justifiable inferences
    therefrom.
2. WAR ⊘⇒4—SABOTAGE—DESTRUCTION OF WAR MATERIAL—ATTEMPT.
        Under Sabotage Law April 20, 1918, § 3, providing that whoever, in
    times of war destroys war material, or whoever willfully attempts to
    make or causes to be made in a defective manner any war materials, a
    conviction can be had for an "attempt," where the evidence shows a will-
    full advising, soliciting, and attempt to influence another to commit the
    felony named in the act.
3. COURTS ⊘⇒365—AUTHORITY OF STATE DECISIONS—CRIMINAL CASES.
        Though there are no common-law offenses against the United States,
    and criminal cases are controlled by federal statutes, state statutes and
    decisions may be persuasive.

Homer De Bolt and another were indicted and tried for violating
Sabotage Law, § 3.   On motions for directed verdicts.   Motions
overruled.

Stuart R. Bolin, U. S. Atty., and F. F. Smith, Asst. U. S. Atty.,
both of Columbus, Ohio.

N. J. Weisend, of Columbus, Ohio, and J. M. Lewis, of Urbana,
Ohio, for defendants.

SATER, District Judge.   [1] The evidence having all been sub-
mitted, each of the defendants moves for a directed verdict on the
grounds (1) that the indictment does not state a cause of action, and
(2) that, if the indictment is good, the evidence does not warrant a
conviction.   It is the duty of a court, in considering such a motion,
to take that view of the evidence most favorable to the party against
whom it is desired that the verdict should be directed, and, from that
evidence and the inferences reasonably and justifiably to be drawn
therefrom, determine whether or not under the law a verdict might be
found for that party (Nelson v. Ohio Cultivator Co., 188 Fed. 620,
629, 630, 112 C. C. A. 394 [C. C. A. 6]; Herman H. Hettler Lumber
Co. v. Olds, 221 Fed. 612, 615, 137 C. C. A. 336 [C. C. A. 6]); or,
to use the language of Judge Sanborn in the criminal case of Isbell
v. United States, 227 Fed. 788, 790, 142 C. C. A. 312 (C. C. A. 8):

"At the close of the evidence in every trial by jury, the question of law, not
whether the weight of the evidence sustains the claims of the plaintiff or the
defendant, but whether or not there is any substantial evidence to sustain
the claim of the plaintiff, necessarily and unavoidably arises, and the duty
rests upon the trial court to direct a verdict for the defendant if there is no
such evidence."

⊘⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[2, 3] The Ralston Steel Car Company, located at Columbus, Ohio, has for some time past been engaged on its premises in manufacturing for the United States, for war purposes, about 4,400 steel cars. About 400 of them are to be used in trench warfare in France; the residue are to be employed on steam railways to aid in the prosecution of the present war with Germany. In early June an attempt was made to unionize the company's plant. Some 10 or 12 employés who had joined the union were discharged. Whether their discharge was due to their union proclivities or to other cause or causes is not material to the decision of the questions presented. One Ingraham, who worked at a nine-foot spindle lathe, which was used on the company's premises in the production of the heretofore mentioned war utilities, refused all solicitations to connect himself with the union and continued to work at his machine. On the evening of June 11th a meeting of the members of the union was held, which was attended by a number of those who had identified themselves with it, and also by one Fox, who had applied for admission to the union and had arranged to pay his dues on the day following. It was understood that Fox should remain in the company's employ for the purpose of furnishing information as to the new men that might be brought in to take the places of the discharged employés, as to the work that was being done, and as to where and by whom the dies for the company were made.

On account of the alleged occurrences at and following the meeting at which some, if not all, of the discharged workmen were present, an indictment was preferred against De Bolt and Kelso, which recites that on that date they unlawfully, maliciously, feloniously, and willfully, with reason to believe that their act might injure, interfere with, and obstruct the United States in preparing for and carrying on the war with Germany and its allies, attempted to cause to be made in a defective manner the steel railroad cars then in process of manufacture by the Ralston Company, by advising and attempting to influence Fox to procure a small bottle of vinegar and to pour its contents into the bearings of the lathe on which Ingraham was working, and also to loosen the tail stocks and screws of such machine, and to do such other things to such lathe as would spoil the material in it on which Ingraham was working. The indictment does not state what effect the vinegar would have on the bearings. There is evidence, however, that tends to show that the discharge of Ingraham was desired; that vinegar applied to the bearings of the lathe would thin and cut the lubricating oil, would cause the bearings to become hot, and would necessitate the removal of the shaft and delay in completion of the work in hand; and that, although loosening of the tail stock would ordinarily be detected by a workman, such loosening would permit the material in the lathe to drop from its place and cause the work done to be defective and untrue.

The indictment is based on section 3 of what is commonly known as the Sabotage Law, approved April 20, 1918, and entitled "An act to punish the willful injury or destruction of war material, or of war premises or utilities used in connection with war material, and for other purposes," which section is as follows:

"That when the United States is at war, whoever, with intent to injure, interfere with, or obstruct the United States or any associate nation in preparing for or carrying, on the war or whoever, with reason to believe that his act may injure, interfere with, or obstruct the United States or any associate nation in preparing for or carrying on the war, shall willfully make or cause to be made in a defective manner, or attempt to make or cause to be made in a defective manner, any war material, as herein defined, or any tool, implement, machine, utensil, or receptacle used or employed in making, producing, manufacturing, or repairing any such war material, as herein defined, shall, upon conviction thereof be fined not more than $10,000 or imprisoned not more than thirty years or both."

The government has offered substantial evidence, which the defendants have vigorously combated, to prove the charge laid in the indictment. Fox, if he ever assented to the pouring of vinegar in the bearings of Ingraham's lathe or to loosening its tail stock or screws (all of which is for the jury's determination), recanted, and, being. suspected by his employer and kept under surveillance, disclosed, according to his evidence, when called to the office of his employer, the entire scheme which the government claims was concocted on the evening of June 11th. The defendants' position is that, to convict of an attempt to commit a crime, it is necessary to show that an overt act was done with the specific intent to commit that particular crime, and that merely to advise, solicit, or attempt to influence another to commit a crime is not an overt act, but that some additional step constituting such an overt act is necessary to constitute an offense. They therefore claim that the indictment is insufficient in law, and that, if the evidence offered by the government be accepted as true, no offense was committed, for the reason that the defendants did nothing more than to advise, solicit, and attempt to influence Fox to pour vinegar into the bearings of the lathe and to loosen its tail stock and screws.

The gravity of the situation produced by the present war is such that Congress in its wisdom was impelled to enact the wise, but somewhat drastic, law on which the indictment is based. It denounces as a felon (see section 335, Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1152 [Comp. St. 1916, § 10509]) not only the person who, with reason to believe that his act may injure, interfere with, or obstruct the United States in preparing for or carrying on the war, willfully makes or causes to be made in a defective manner any war material, such as the Ralston Steel Car Company was making, but also the person who under like conditions attempts to make or who attempts to cause to be made in a defective manner any such material. The language employed is comprehensive and unrestricted. It does not define the nature of the attempt which it condemns, but expressly makes the attempt itself a separate substantive crime, and covers any attempt to cause to be made in a defective manner war material coming within its terms. Another illustration of a law which makes it a penal offense to attempt a prohibited act is found in section 2 of the Sherman Anti-Trust Act (Act July 2, 1890, c. 647, 26 Stat. 209 [Comp. St. 1916, § 8821]). In Waters-Pierce Oil Co. v. Texas, 212 U. S. 86, 107, 29 Sup. Ct. 220, 53 L. Ed. 417, it was said not to be uncommon in criminal law to punish, not only a completed act, but

also acts which attempt to bring about the prohibited result. The court had under consideration a Texas statute, but on page 110 it applied the same rule to the Sherman Act.

Whether the defendants attempted to commit a felony (assuming the government's evidence to be true) depends upon the answer to the question: Does the willful advising, soliciting, and attempting to influence another to commit the felony named in the statute constitute an attempt? In Bishop's New Crim. Law (Ed. 1892) vol. 1, §§ 728, 729, it is said:

"An attempt is an intent to do a particular criminal thing, with an act toward it falling short of the thing intended. Hence, the two elements of an evil intent and a simultaneous resulting act constitute, and yet only in combination, an indictable offense, the same as in any other crime."

Other definitions of attempt and of the elements of an attempt to commit a crime are found in 3 Am. & Eng. Ency. Law, 250, 251, 254, and Wooldridge v. U. S., 237 Fed. 775, 778, 779, 150 C. C. A. 529 (C. C. A. 9). Whether a mere solicitation to commit a crime—a mere advising and effort to influence its commission—is an act toward carrying the intent into execution, and is an endeavor to attempt to commit a crime, has been inferentially, but not expressly, decided by the Supreme Court. In United States v. Quincy, 6 Pet. 445, 465 (8 L. Ed. 458) it was ruled that:

"To attempt to do an act does not, either in law or in common parlance, imply a completion of the act, or any definite progress toward it; *any* effort or endeavor to effect it, will satisfy the terms of the law." (Italics mine.)

The language of the court is as broad as that of the Sabotage Act. By the great weight of authority it is an indictable offense at common law for one to counsel and solicit another to commit a felony or other aggravated offense, although the solicitation is of no effect and the crime counseled is not in fact committed. A citation of the many pertinent cases is impracticable, but reference is made to Commonwealth v. Flagg, 135 Mass. 545, 549; 12 Cyc. 182; Rex v. Higgins, 2 East, 5; Reg. v. Ransford, 13 Cox. Crim. Law Cas. 9, 15; United States v. Lyles, Fed. Cas. No. 15,646; United States v. Worrall, 2 Dall. 384, Fed. Cas. No. 16,766, in connection with which see State v. Butler, 8 Wash. 194, 35 Pac. 1093, 25 L. R. A. at page 439, 40 Am. St. Rep. 900; United States v. Craig (C. C.) 28 Fed. 795, 800; Commonwealth v. Tolman, 149 Mass. 229, 21 N. E. 377, 3 L. R. A. 747, 14 Am. St. Rep. 414 and notes; Commonwealth v. Harrington, 3 Pick. (Mass.) 26; Ohio v. Davis, Tappan (Ohio St.) 171; State v. Keyes, 8 Vt. 57, 30 Am. Dec. 450; State v. Avery, 7 Conn. 266, 18 Am. Dec. 105; Bishop's New Crim. Law, vol. 1, § 767 et seq.; Wharton, Crim. Law (11th Ed.) §§ 212, 218, and note to 213. Clark & Marshall's Law of Crimes, § 131, states that:

"The decided weight of authority, both in England and the United States, is in favor of the doctrine that it is a misdemeanor merely to solicit another to commit a crime, if the crime be a felony, though nothing further is done toward carrying out the unlawful purpose. The solicitation, without more, is regarded as a sufficient act to take the case out of the sphere of mere intent."

253 F.—6

It is true there are no common-law offenses against the United States (United States v. Eaton, 144 U. S. 677, 687, 12 Sup. Ct. 764, 36 L. Ed. 591); but state statutes and decisions may be persuasive, although criminal cases in the national courts are controlled by federal statutes (Byrne, Fed. Crim. Proc. § 1). People v. Bush, 4 Hill (N. Y.) 133, is illuminating. A New York statute made arson a felony. Another statute—the one under which the indictment was brought—provided that every person who shall attempt to commit an offense prohibited by law, and in such attempt shall do any act toward the commission of such offense, but shall fail in the perpetration thereof, or shall be prevented or intercepted in executing the same, upon conviction shall be punished. The defendant was indicted for soliciting and inciting another to burn a barn. On the hearing the evidence showed that subsequent to the solicitation the defendant supplied the person solicited with a match with which to start the fire, but that such person never intended to commit the crime. The counts in the indictment charged the solicitation, but not the furnishing of the match, and were held sufficient. The case was decided without reference to the fact that the match was furnished. It was ruled that an attempt in any form to commit an offense was within the statute, a doctrine which coincides with that announced in United States v. Quincy, supra; that the defendant endeavored to make himself an accessory before the fact, as did the defendants in the instant case, if the government's evidence be true; that solicitation is a species of attempt; and that a mere solicitation to commit a felony is an offense, whether the felony is actually committed or not.

I am not unmindful that there are authorities which hold that a mere advising, solicitation, or incitement to commit a crime is not a step taken or an act done toward its commission. For the purposes of this case it is not necessary to analyze or distinguish them. The New York statute, which was aimed at attempts, and under which the Bush Case was decided, was general in its provisions. We have in the instant case the specific declaration of the Sabotage Act that the attempt therein named, being such as is recited in the indictment, constitutes a crime. To attempt to cause a thing to be done is an attempt to effect or bring about the doing of that thing. Advising and attempting to influence the doing of a thing is a means, and often a most potent means, of effecting or accomplishing the desired result. Mere words may constitute the offense of an attempt, when they solicit the commission of a crime. Wharton, Crim. Law (11th Ed.) note to section 213, and cases cited, and 3 Am. & Eng. Ency. Law, 264. There is substantial agreement among the authorities that words that are seditious, or provocative of breaches of the public peace, are subject to penal judicial action (Wharton, Crim. Law [11th Ed.] § 213); that solicitations which in any way attack the body politic, by way of treason, scandal, or nuisance, are indictable as independent offenses, and, if the solicitation involves the employment of illegal means to effect the illegal end, it may become substantively indictable (Wharton, § 213; Cox v. People, 82 Ill. 191); that all such acts or attempts as tend to the prejudice of the community are indictable (Rex v. Higgins, 2 East, 5, 21);

and that it is criminal to counsel, advise, or entice another to commit an offense of a high and aggravated character, whose commission will tend to breaches of the peace or other great disorder and violence (Commonwealth v. Willard, 22 Pick. [Mass.] 476, 12 Cyc. 182, note). In the highly instructive and much cited case of Rex v. Higgins it was held that an attempt to incite another to steal is prejudicial to the community. Lawrence, J., there said:

"The whole argument for the defendant turns upon a fallacy in assuming that no act is charged to have been done by him; for a solicitation is an act. The offense does not rest in mere intention; for in soliciting Dixon to commit the felony the defendant did an act toward carrying his intention into execution. It is an endeavor or attempt to commit a crime."

The indictment charges an aggravated offense much more prejudicial to the community than an incitement to steal—an incitement or solicitation to commit an offense which, if committed, would inevitably cripple the nation in the prosecution of the present war, prolong its duration, increase its cost, and multiply the number of killed and wounded Americans. The offense charged is such as tends to aid our country's enemies, and is an attack on our body politic; i. e., the whole body of people living under our organized political government, and, law-abiding as our citizenship is, is provocative of disorder and breaches of the peace.

The indictment is sufficient, and the evidence such as requires the submission of the case to the jury. The motions to direct a verdict are overruled, and an exception may be noted by each of the defendants.